[No. F015725. Fifth Dist. May 24, 1993.]

WARREN NICHOLS, Plaintiff and Appellant, v.
EDWARD C. KELLER et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

1674

**COUNSEL**

William L. Veen, Kevin Lancaster and Rebecca Quinn for Plaintiff and Appellant.

Kroloff, Belcher, Smart, Perry & Christopherson, Claude S. Smart and Randy G. Lockwood, Murphy, Pearson, Bradley & Feeney and Mark E. Ellis for Defendants and Respondents.

## OPINION

## MARTIN, Acting P. J.—

### INTRODUCTION

■■■■ Plaintiff appeals from summary judgments (Code Civ. Proc., § 437c) in a legal malpractice action arising from an industrial accident.[1]

### FACTS

In December 1987, Zurn Industries employed the 46-year-old plaintiff at a cogeneration plant construction project in Crow's Landing, Stanislaus County. Zurn was a subcontractor and Kiewit Industrial was the general contractor on the project. Plaintiff had been a union boilermaker for over 24 years. On December 7, plaintiff commenced work on the exterior of a large boiler. He was working on scaffolding approximately 50 feet above the ground. Plaintiff testified at deposition he was working on the uppermost level of scaffolding with no workers above him. However, a coworker declared there were individuals working on an unfinished catwalk above the plaintiff.

Sometime before noon, plaintiff completed a heliarc weld and removed his welding "hood," which left only a cloth cap on his head. Plaintiff then reached for his hard hat when something hit him on the head. Plaintiff dropped to his knees on the scaffolding, although he apparently did not lose consciousness. He never saw the object that hit him on the head. However, someone told him it was a piece of steel approximately four inches by four inches by one-quarter-inch thick.

A coworker transported plaintiff to a hospital emergency room in Patterson, California. Emergency room personnel X-rayed plaintiff's head and closed a scalp laceration with 16 stitches. The emergency room doctor released plaintiff to "light duty" work for a one-week period. Plaintiff returned to his regular work as a welder approximately one week after that.

On February 24, 1988, plaintiff and his wife met with defendant E. Paul Fulfer, an attorney with the defendant firm of Fulfer & Fulfer, to discuss

---

[1]An order granting a motion for summary judgment, entire or partial, is a preliminary nonappealable order. Appeal must be taken from the final judgment ultimately entered in the case. (*King* v. *State of California* (1970) 11 Cal.App.3d 307, 310 [89 Cal.Rptr. 715].) Here plaintiff erroneously appeals from a January 17, 1991, minute order taking the summary judgment motions under submission rather than the summary judgments entered March 4, 1991, and April 12, 1991. Where the trial court renders a summary judgment, the appellate court can treat an appeal from a preliminary order as an appeal from the subsequent judgment. (*Avila* v. *Standard Oil Co.* (1985) 167 Cal.App.3d 441, 445 [213 Cal.Rptr. 314].)

plaintiff's accident and legal rights and remedies. At the conclusion of the meeting, defendant Fulfer had plaintiff sign a workers' compensation application for adjudication of claim. Fulfer executed the form as "applicant's attorney" and filed the application on plaintiff's behalf with the Stockton office of the Division of Industrial Accidents/California Department of Industrial Relations. The Stockton office received the document on February 26, 1988 (case No. STK068205). Defendant Fulfer then associated defendant Edward Keller, an attorney with defendant firm of LaCoste, Keller, Mello & Land, to prosecute the workers' compensation claim. Fulfer signed a formal pleading bearing the caption "association of attorneys" on January 20, 1989.

Defendant Keller met with plaintiff on March 28, 1988, and said he would represent plaintiff in his pending workers' compensation matter against Zurn Industries and Aetna Casualty and Surety Company. Defendant Keller continued to represent plaintiff in the workers' compensation proceeding until July 1989.[2]

Sometime in 1989, plaintiff and his wife traveled from their home in Nevada to a workers' compensation medical appointment in the San Francisco area. On their return trip, they visited the Boilermakers Union Hall in Pittsburg, California. Plaintiff and his wife spoke with union employees Jim Wilson and Greg Bingham regarding plaintiff's accident at the cogeneration plant. They suggested plaintiff meet with another attorney and scheduled an appointment with James Butler of the law offices of William L. Veen in San Francisco.

On July 7, 1989, plaintiff and his wife met with Attorney Butler. According to plaintiff,

"At this meeting I learned for the first time that a third-party claim could and very likely should have been brought in regards to my industrial injury in December 1987, and that my wife and I may have a legal claim against Edward C. Keller and Elbert Paul Fulfer, attorneys, who had failed to advise or inform us of these facts."

On March 21, 1990, plaintiff filed a complaint for damages in Stanislaus County Superior Court. Plaintiff named Attorneys Keller, Fulfer, and their respective law firms as defendants. He alleged causes of action for legal malpractice and negligent spoliation of evidence against all defendants. He

---

[2]Defendants point out the workers' compensation claim is still pending. The law firm of William L. Veen of San Francisco, which is prosecuting the instant action for legal malpractice, is also handling the workers' compensation matter. Plaintiff has not alleged any malpractice in connection with Fulfer and Keller's handling of the workers' compensation claim.

also alleged a cause of action for negligent referral against defendant Fulfer and his law firm.

On December 17, 1990, defendant Fulfer and his law firm filed a motion for summary judgment. Defendants alleged (1) plaintiff's legal malpractice claims against defendant Fulfer were time-barred by the one-year statute of limitations (Code Civ. Proc., § 340.6); (2) the attorney-client relationship, if any, which existed between defendant Fulfer and plaintiff was limited solely to the subject matter of plaintiff's workers' compensation claim; (3) plaintiff could never prove, as a matter of law, he ever possessed a valid third party claim based on the theories alleged in his complaint; (4) there was no basis under California law to allege a negligent spoliation theory against defendant under the facts set forth in the complaint; and (5) there was no evidence of negligent referral of the workers' compensation claim to defendant Keller.

On December 19, 1990, defendant Keller and his law firm also filed a motion for summary judgment. These defendants specifically alleged (1) no attorney-client relationship existed between defendant Keller and plaintiff beyond the workers' compensation claim "already begun and referred to defendant Keller"; (2) there was no basis under California law to allege a negligent spoliation theory against defendant Keller; (3) plaintiff's legal malpractice claims were barred by the one-year statute of limitations since plaintiff discovered, or should have discovered, the alleged malpractice prior to February 1989; and (4) plaintiff could never prove he ever possessed a valid third party claim based upon the theory of peculiar risk of harm.

On January 3, 1991, plaintiff filed separate memoranda of points and authorities in opposition to the defendants' motions for summary judgment. Thereafter, both attorney defendants and their respective law firms filed reply briefs in the action.

On January 17, 1991, the court conducted a hearing on the motions for summary judgment and took the matters under submission.

On January 31, 1991, the court filed a minute order granting defendants' motions for summary judgment. The court found no triable issues of fact regarding the causes of action for spoliation of evidence and negligent referral and noted these issues were not contested during the January 17, 1991, hearing. The court stated with respect to the statute of limitations:

"[U]ndisputed evidence established that the plaintiff had sufficient information prior to February of 1989 to put him on inquiry concerning the pursuit of other possible claims in his case. . . . . By his own testimony, the

plaintiff indicates that prior to February of 1989, he . . . suspected that someone had done something wrong regarding his case. . . .

"The Court determines that the statute of limitations began running no later than February 1, 1989. The complaint for malpractice et al., was filed March 21, 1990, outside of the applicable statute of limitations for discovery (one year, [Code Civ. Proc.,] § 340.6) . . . . Since the event of discovery determines the statute of limitations on these facts, no other statute of limitations is applicable.

"In addition, undisputed facts indicate that there was only one meeting between the plaintiff and [defendant Fulfer] on February 24, 1988, and no further representation was contemplated. Although Mr. Fulfer did not formally withdraw from the case, undisputed facts indicate there was no continuing representation by this defendant in such a way as to toll the statute of limitations . . . .

"Defendant KELLER's motion for summary judgment is granted. . . . [I]t is undisputed that the representation was undertaken for the limited purpose of the workman's compensation claim. Furthermore, an attorney's obligation does not include a duty to advise on all possible alternatives no matter how remote or tenuous . . . ."

Plaintiff then filed a motion for reconsideration (Code Civ. Proc., § 1008, subd. (a)) of the January 31, 1991, minute order. Plaintiff specifically alleged a question of fact existed as to when the statute of limitations ran and as to whether defendants owed plaintiff a duty to inform him of or initiate a third party action on his behalf.

On February 27, 1991, the court filed a formal order granting defendant Fulfer's motion for summary judgment. On March 4, 1991, the court filed and entered an order granting defendant Keller's motion for summary judgment. After these orders were entered, on March 13, 1991, defendant Fulfer and his law firm and defendant Keller and his law firm filed opposition to plaintiff's motion for reconsideration. Plaintiff thereafter filed a written reply to defendants' opposition to the motion for reconsideration.

On March 26, 1991, the court conducted a hearing on plaintiff's motion for reconsideration and denied the motion by minute order and the next day the court filed a formal order denying plaintiff's motion for reconsideration as to defendant Keller and his law firm.

On April 4, 1991, plaintiff filed a notice of appeal.

On April 12, 1991, the court filed a formal order denying plaintiff's motion for reconsideration as to defendant Fulfer and his law firm. On the same date, the court filed a formal judgment in favor of defendant Fulfer and his law firm and against plaintiff in the instant matter.

## DISCUSSION

I. *Did Defendants Owe Plaintiff a Duty to Advise Him of the Possibility of a Third Party Civil Lawsuit and the Applicable Statute of Limitations?*

Plaintiff contends:

"[A]n attorney does have a duty to provide sound advice in furtherance of the client's best interests. Mr. Nichols, a man of limited education . . . went to respondents seeking legal advice and representation from members of the Bar of California regarding any and all legal remedies he might be eligible for arising from his work injury. Respondents' failure to advise appellant that he may have a third party claim; respondents' failure to advise appellant regarding the applicable statute of limitations; and respondents' failure to refer appellant to an attorney experienced in third party actions was a breach of that duty.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . In the instant case, the state of the law concerning the peculiar risk of harm and safe place to work doctrines was solidified and 'discoverable'. Appellant suffered fractures of his cervical vertebrae and brain damage when he was injured at the cogeneration plant construction site. There was a general contractor on site who, by all reports, was solvent, knew or should have known of the special risks presented by workers performing tasks in close vertical proximity to each other and who failed to take adequate and special precautions against this foreseeable risk of injury."

Summary judgment is proper if the supporting papers are sufficient to sustain a judgment in favor of the moving party as a matter of law and the opposing party presents no evidence giving rise to a triable issue as to any material fact. (Code Civ. Proc., § 437c, subd. (c).) ■ To prevail on a summary judgment motion, the defendant must conclusively negate a necessary element of the plaintiff's case or establish a complete defense. (*Horsemen's Benevolent & Protective Assn.* v. *Insurance Co. of North America* (1990) 222 Cal.App.3d 816, 820 [271 Cal.Rptr. 838].) A defendant has met his or her burden of showing a cause of action has no merit if that party has shown one or more elements of the cause of action, even if not

separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant has met that burden, the burden shifts to the plaintiff to show a triable issue of one or more material facts exists as to that cause of action. (Code Civ. Proc., § 437c, subd. (n)(2).) Where the evidence presented by defendant does not support judgment in his favor, the motion must be denied without looking at the opposing evidence, if any, submitted by plaintiff. (*Albertini* v. *Schaefer* (1979) 97 Cal.App.3d 822, 831 [159 Cal.Rptr. 98].) ■ The evidence of the moving party is strictly construed and that of the opposing party liberally construed. (*Coppola* v. *Superior Court* (1989) 211 Cal.App.3d 848, 862 [259 Cal.Rptr. 811].) Where there is no material issue of fact to be tried and the sole question before the court is one of law, it is the duty of the trial court on a motion for summary judgment to hear and determine the issue of law. (*Rombalski* v. *City of Laguna Beach* (1989) 213 Cal.App.3d 842, 848 [261 Cal.Rptr. 820].) In reviewing a grant of summary judgment, an appellate court must make its own independent determination of the construction and effect of the papers submitted. (*Saldana* v. *Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1513-1515 [285 Cal.Rptr. 385]; *Preis* v. *American Indemnity Co.* (1990) 220 Cal.App.3d 752, 757 [269 Cal.Rptr. 617].)

■ Actionable legal malpractice is compounded of the same basic elements as other kinds of actionable negligence: duty, breach of duty, causation, and damage. The elements of a cause of action for professional negligence are: (1) the duty of the professional to use such skill, prudence and diligence as other members of the profession commonly possess and exercise; (2) breach of that duty; (3) a causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional negligence. When these elements coexist, they constitute actionable negligence. On the other hand, absence of, or failure to prove, any of them is fatal to recovery. An attorney, by accepting employment to give legal advice or render legal services, impliedly agrees to use ordinary judgment, care, skill, and diligence in the performance of the tasks he or she undertakes. (*Blain* v. *Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1062-1063 [272 Cal.Rptr. 250]; *Banerian* v. *O'Malley* (1974) 42 Cal.App.3d 604, 611-613 [116 Cal.Rptr. 919].)

The question of the existence of a legal duty of care in a given factual situation presents a question of law which is to be determined by the courts alone. Entry of summary judgment in favor of the defendant in a professional negligence action is proper where the plaintiff is unable to show the defendant owed such a duty of care. (*Nymark* v. *Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1095 [283 Cal.Rptr. 53]; *Clarke* v. *Hoek*

(1985) 174 Cal.App.3d 208, 213-214 [219 Cal.Rptr. 845].) Absent the existence of a duty by the professional to the claimant, there can be no breach and no negligence. (*Goldberg* v. *Frye* (1990) 217 Cal.App.3d 1258, 1267-1268 [266 Cal.Rptr. 483].)

One legal scholar has noted:

"An attorney advising or representing an injured employee concerning workers' compensation benefits must consider whether the employee should also pursue a lawsuit for civil damages against (1) a third party . . . or (2) the employee's employer or coworker, or the employer's workers' compensation insurer . . . . For comparable injuries, damages recoveries often greatly exceed workers' compensation recoveries.

"The compensation attorney should either personally conduct a skilled and careful inquiry into the prospects for obtaining damages for the client that would exceed recoverable workers' compensation benefits or refer the client to an attorney who is competent to determine the prospects for such a recovery. . . .

"A workers' compensation attorney's failure to file and pursue a timely lawsuit for civil damages, or to refer the client to another lawyer for that purpose, can be the basis for a legal malpractice action. . . .

"Often, it is prudent to initiate both a compensation claim and a civil action, and to pursue both until it is determined that one of them will provide a full recovery. There are, of course, situations in which workers' compensation clearly provides the worker a complete remedy. It is not helpful to pursue a lawsuit for an injured worker when, e.g.: [¶] (1) A tort cause of action cannot be stated against any identifiable defendant; [¶] (2) A trier of fact is unlikely to assign liability to a defendant who could pay the judgment; or [¶] (3) The injured employee's own fault seems likely to reduce the amount of recoverable damages to less than the value of recoverable workers' compensation benefits." (Peyrat, Cal. Workers' Damages Practice (Cont.Ed.Bar 1985) § 1.4, pp. 4-5.)

■ A significant area of exposure for the workers' compensation attorney concerns that attorney's responsibility for counseling regarding a potential third party action. One of an attorney's basic functions is to advise. Liability can exist because the attorney failed to provide advice. Not only should an attorney furnish advice when requested, but he or she should also

volunteer opinions when necessary to further the client's objectives. The attorney need not advise and caution of every possible alternative, but only of those that may result in adverse consequences if not considered. Generally speaking, a workers' compensation attorney should be able to limit the retention to the compensation claim if the client is cautioned (1) there may be other remedies which the attorney will not investigate, and (2) other counsel should be consulted on such matters. However, even when a retention is expressly limited, the attorney may still have a duty to alert the client to legal problems which are reasonably apparent, even though they fall outside the scope of the retention. The rationale is that, as between the lay client and the attorney, the latter is more qualified to recognize and analyze the client's legal needs. The attorney need not represent the client on such matters. Nevertheless, the attorney should inform the client of the limitations of the attorney's representation and of the possible need for other counsel. (2 Mallen & Smith, Legal Malpractice (3d ed. 1989) §§ 19.5, 19.28, pp. 159-162, 229-233; see also *Davis* v. *Damrell* (1981) 119 Cal.App.3d 883, 886-889 [174 Cal.Rptr. 257].)

■ An attorney's duty to his or her client depends on the existence of an attorney-client relationship. If that relationship does not exist, the fiduciary duty to a client does not arise. Except for those situations where an attorney is appointed by the court, the attorney-client relationship is created by some form of contract, express or implied, formal or informal. (*Fox* v. *Pollack* (1986) 181 Cal.App.3d 954, 959 [226 Cal.Rptr. 532].) ■ A member of the State Bar shall not contract with a client prospectively limiting the member's liability to the client for the member's professional malpractice. However, this rule is not intended to prevent a member from reasonably limiting the scope of the member's employment or representation. (Rules Prof. Conduct, rule 3-400(A), Discussion.)

■ In their motions for summary judgment, defendant attorneys maintained they agreed to undertake only a limited employment. Attorney Fulfer asserted he agreed to represent plaintiff in the workers' compensation matter only and, even then, for two specific purposes: (1) to file a workers' compensation application on plaintiff's behalf, and (2) to refer plaintiff to defendant Keller, so the latter could actually prosecute the workers' compensation claim on plaintiff's behalf. Attorney Keller argued the attorney-client relationship between the plaintiff and himself was solely for the purpose of representation in the workers' compensation claim. Keller claimed he owed only a duty to prosecute that claim and not to prosecute any possible third party claim or to advise plaintiff as to the prosecution of such a claim. Defendants reiterate these positions on appeal.

In his opposition to the motions for summary judgment, plaintiff attached the declaration of Attorney Yale Jones, a certified specialist in workers' compensation law. Jones declared Attorney Fulfer acted below the standard of care of an attorney in the Stockton area by failing to: (1) advise plaintiff of the different remedies available through the Workers' Compensation Appeal Board and through a civil action; (2) advise plaintiff of the statute of limitations applicable to plaintiff's third party action; (3) advise plaintiff to consult another attorney concerning any available rights and remedies plaintiff might have against third parties; and (4) provide plaintiff with written advice regarding which rights defendant Fulfer would protect or which needed to be reviewed by other competent attorneys and what would happen in the event plaintiff did not protect those rights. Attorney Jones also declared defendant Keller acted below the standard of care for the same reasons. Declarant's opinion as to defendant Keller was based on a set of hypothetical facts.

Thus, defendants maintained they undertook limited duties to plaintiff and, as a matter of law, they owed him no duty to advise about possible third party claims, while plaintiff's expert, Yale Jones, declared their duties were far more expansive and required both counsel to advise plaintiff about various workers' compensation and civil remedies, the applicable statute of limitations for a third party action, the propriety of obtaining a "second opinion" as to available rights and remedies, and the precise scope of defendants' representation. The lower court's minute order concluded: "[I]t is undisputed that the representation was undertaken for the limited purpose of the workman's compensation claim. Furthermore, an attorney's obligation does not include a duty to advise on all possible alternatives no matter how remote or tenuous. [(*Davis* v. *Damrell* (1981) 119 Cal.App.3d 883, 889 [174 Cal.Rptr. 257].)]"

A determination that defendants owe plaintiff no duty of care would negate an essential element of plaintiff's cause of action for negligence and would constitute a complete defense. Whether a duty of care exists is a question of law for the court and is reviewable de novo. All persons are required to use ordinary care to prevent injury to others from their conduct. (Civ. Code, § 1714, subd. (a); *Scott* v. *Chevron U.S.A.* (1992) 5 Cal.App.4th 510, 515 [6 Cal.Rptr.2d 810].) ■ A professional has a duty to use such skill, prudence and diligence as other members of the profession commonly possess and exercise. (*Blain* v. *Doctor's Co., supra*, 222 Cal.App.3d 1048, 1062-1063; BAJI No. 6.37 (7th ed. pocket pt.) p. 97.) Legal duties are not discoverable facts of nature. Rather, they are merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage

done. (*Christensen* v. *Superior Court* (1991) 54 Cal.3d 868, 885 [2 Cal.Rptr.2d 79, 820 P.2d 181], citing *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 434 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].)

■ Foreseeability of harm, though not determinative, has become the chief factor in duty analysis. Confusion has arisen over the concept of foreseeability and the variety of roles it plays in tort law. Foreseeability is a question of fact for the jury in many contexts. However, in defining the boundaries of duty, foreseeability is a question of law for the court. The question of foreseeability in a "duty" context is a limited one for the court and is readily contrasted with the fact-specific foreseeability questions bearing on negligence (breach of duty) and causation posed to the jury or trier of fact. (*Scott* v. *Chevron U.S.A.*, *supra*, 5 Cal.App.4th 510, 515-516; *Lopez* v. *McDonald's Corp.* (1987) 193 Cal.App.3d 495, 506-509 [238 Cal.Rptr. 436].)

■ It seems to us the foreseeability factor compels a finding of duty in cases of this type. A trained attorney is more qualified to recognize and analyze legal needs than a lay client, and, at least in part, this is the reason a party seeks out and retains an attorney to represent and advise him or her in legal matters. (2 Mallen & Smith, Legal Malpractice, *supra*, §§ 19.5, 19.28, pp. 159-162, 229-233.) As Justice Brandeis observed a century ago:

" 'The duty of a lawyer today is not that of a solver of legal conundrums: he is indeed a counsellor at law. Knowledge of the law is of course essential to his efficiency, but the law bears to his profession a relation very similar to that which medicine does to that of the physicians. The apothecary can prepare the dose, the more intelligent one even knows the specific for most common diseases. It requires but a mediocre physician to administer the proper drug for the patient who correctly and fully describes his ailment. The great physicians are those who in addition to that knowledge of therapeutics which is open to all, know not merely the human body but the human mind and emotions, so as to make themselves the proper diagnosis—to know the truth which their patients fail to disclose . . . .' " (Mason, Brandeis: A Free Man's Life (1946) p. 80.)

What was true in 1893 is certainly true today in this increasingly complex and technologically advanced society in which we live. In the context of personal injury consultations between lawyer and layperson, it is reasonably foreseeable the latter will offer a selective or incomplete recitation of the facts underlying the claim; request legal assistance by employing such

everyday terms as "workers' compensation," "disability," and "unemployment"; and rely upon the consulting lawyer to describe the array of legal remedies available, alert the layperson to any apparent legal problems, and, if appropriate, indicate limitations on the retention of counsel and the need for other counsel. In the event the lawyer fails to so advise the layperson, it is also reasonably foreseeable the layperson will fail to ask relevant questions regarding the existence of other remedies and be deprived of relief through a combination of ignorance and lack or failure of understanding. And, if counsel elects to limit or prescribe his representation of the client, i.e., to a workers' compensation claim only without reference or regard to any third party or collateral claims which the client might pursue if adequately advised, then counsel must make such limitations in representation very clear to his client. Thus, a lawyer who signs an application for adjudication of a workers' compensation claim and a lawyer who accepts a referral to prosecute the claim owe the claimant a duty of care to advise on available remedies, including third party actions.

Assuming arguendo a duty of care, defendant Fulfer contends defendants' alleged acts or omissions were not the "cause" of any asserted loss of a third party claim available to plaintiff. As noted above, the elements of actionable negligence, in addition to a duty to use due care, include breach of that duty and a legal causal connection between the breach and plaintiff's injuries. Moreover, breach of duty is usually a fact issue for the jury. If the circumstances permit a reasonable doubt whether the defendant's conduct violates the standard of due care, the doubt must be resolved by the jury as an issue of fact rather than of law by the court. Like breach of duty, causation also is ordinarily a question of fact which cannot be resolved by summary judgment. The issue of causation may be decided as a question of law only if, under undisputed facts, there is no room for a reasonable difference of opinion. (*Onciano* v. *Golden Palace Restaurant, Inc.* (1990) 219 Cal.App.3d 385, 394-395 [268 Cal.Rptr. 96].)

 On motion for summary judgment, defendant Fulfer argued plaintiff never possessed a valid third party claim arising from the accident. Thus, Fulfer's failure to pursue such a claim caused no damage to plaintiff as a matter of law. Fulfer specifically argued: (1) plaintiff possessed no third party claim against his employer, Zurn Industries, because workers' compensation was his exclusive remedy for damages; (2) no third party claim existed against any other entity under the "peculiar risk" doctrine because the dropping of the metal fragment was an ordinary, general, or customary danger arising on a construction job site; and (3) no claim existed against any third party entity based upon breach of the common law duty to provide

a safe place to work. In response, plaintiff argued a meritorious cause of action for peculiar risk existed.

The peculiar risk doctrine is a well-recognized exception to the general rule that one who employs an independent contractor is not liable for injuries caused by the negligence of that contractor. A peculiar risk is one which is peculiar to the work to be done and arises out of its character or the place where it is to be performed, and against which a reasonable person would recognize the necessity of taking special precautions. A peculiar risk is something other than the ordinary and customary dangers which may arise in the course of the work or of normal human activity. "Peculiar" does not mean the risk must be one which is abnormal to the type of work done or that it must be an abnormally great risk. The term refers to a special, recognizable danger arising out of the work itself. It is sufficient that it is a risk which the employer should recognize as likely to arise in the course of the ordinary and usual method of doing the work, or the particular method which the employer knows the contractor will adopt. The doctrine subjects the employer to a vicarious liability for its independent contractor's failure to take the necessary special precautions. (*Jimenez* v. *Pacific Western Construction Co.* (1986) 185 Cal.App.3d 102, 109-111 [229 Cal.Rptr. 575]; *Johnson* v. *Tosco Corp.* (1991) 1 Cal.App.4th 123, 131-135 [1 Cal.Rptr.2d 747].) Whether there was a peculiar risk inherent in work being performed is also a question of fact to be resolved by the trier of fact. (*Caudel* v. *East Bay Mun. Utility Dist.* (1985) 165 Cal.App.3d 1, 9 [211 Cal.Rptr. 222].) Thus, based upon the record before us in the instant case, there were factual issues as to the viability of a third party action based on the peculiar risk doctrine which could not be resolved on motion for summary judgment.

Defendant Fulfer lastly contends he was not liable for failing to file an action prior to the expiration of the statute of limitations because he ceased to represent plaintiff prior to the running of the statute. Defendant maintains plaintiff did not rely on him to advise or otherwise prosecute any claim on his behalf after February 24, 1988. Defendant's summary contention must be rejected for two reasons. First, plaintiff's reliance upon defendant, or lack thereof, is a triable issue of material fact. Second, defendant's contention erroneously presumes the absence of a duty to advise about third party claims.

The lower court erroneously granted summary judgment on the duty element of legal negligence, and reversal is required.

## II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The orders granting summary judgment to defendants below are reversed. Plaintiff/appellant is granted costs on appeal.

Thaxter, J., and Harris, J., concurred.

A petition for a rehearing was denied June 18, 1993, and respondents' petitions for review by the Supreme Court were denied September 23, 1993.

---

*See footnote, *ante*, page 1672.