PER CURIAM:
Janice D. Loyd, trustee and liquidator of First Assurance Casualty Co., Ltd., appeals the district court’s dismissal of her complaint against the company’s former law firm, Aguilar & Sebastinelli. The complaint charged the firm with malpractice for failing to prevent the company’s shareholders from conducting a fraudulent insurance scheme. The district court dismissed the action on the alternative grounds that: (1) the trustee lacked standing to Sue; and (2) the complaint failed to state a claim for legal malpractice. We conclude the trustee had standing, but the complaint failed to state a claim for malpractice under California law.
I.
This appeal arises out of an alleged conspiracy to defraud purchasers of First Assurance Casualty’s insurance policies.[1] Approximately one year after First Assurance was incorporated in the Turks & Caicos islands, it was acquired by seven individuals (hereinafter “insiders”), who caused the company to sell insurance policies in the United States, mostly in Texas and California.
Offshore insurance companies are regulated by the California Department of Insurance. They must prove they have sufficient capital to pay potential claims, and must maintain a trust account in the United States. See Cal. Ins.Code 1765.1(b)(1). If the Department is not satisfied with an offshore company’s financial status, it may prohibit in-state insurance brokers from selling or promoting the company’s policies.
The insiders retained Craig Aalseth, an account manager at Paine Webber, to manage the required trust account. Although the company was virtually insol-' vent, Aalseth prepared reports attesting to its financial viability and compliance with California law. Meanwhile,, the insiders were diverting policy premiums into their personal accounts. They permitted the company to pay claims of policyholders only when those claims were small or the claimants threatened to complain to the Department of Insurance.
The company retained Aguilar & Sebas-tinelli to represent it in state regulatory matters. In[1] March 1991, the Department issued a Cease and Desist Order against the company. The law firm successfully challenged the Order in San Francisco Superior Court, enabling the company to continue to sell policies and collect premiums. Two years later, however, the Department issued a second Cease and Desist Order; shortly thereafter the company declared bankruptcy.
In early 1994, the U.S. Bankruptcy Court for the Western District of Oklahoma appointed Janice Loyd trustee for the company. She filed suit on behalf of the company against the insiders, the in *758 surance brokers who had carried the company’s policies, Paine Webber and its employee Craig Aalseth, the company’s accountants, and the law firm. The district court dismissed the claim against the law firm on the grounds that the trustee lacked standing to bring a legal malpractice action against the law firm on the corporation’s behalf, and, in any event, that the complaint failed to state a claim for legal malpractice.
II.
The district court recognized that, as trustee, Loyd was empowered to bring any claim the company could have brought on its own behalf. However, the court held that the company itself would have lacked standing to sue the law firm because it was a sham corporation with no identity separate from its shareholders. We disagree.
Standing to sue is a question of law reviewed de novo. See Byrd v. Guess, 137 F.3d 1126, 1131 (9th Cir.1998). Three elements must be satisfied to meet the minimum constitutional requirements for standing under Article III: injury in fact, causation, and redressability. See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); Worth v. Seldin, 422 U.S. 490, 508, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Redressability is not disputed; the questions are whether the company was injured, and whether the injury was caused by the conduct of the law firm.
The company’s status as a “sham” corporation did not preclude it from suffering an injury cognizable under Article III. A corporation is a distinct legal entity that can sue and be sued separately from its officers, directors, and shareholders. See Merco Constr. Eng’rs, Inc. v. Municipal Court, 21 Cal.3d 724, 729-30, 147 Cal.Rptr. 631, 581 P.2d 636 (1978). It can be injured even if its sole purpose is to serve as an engine of fraud for its shareholders. Injury is evidenced in this case by the fact that the company remains, to this day, a legally distinct entity that is responsible for the liability it incurred as a result of the allegedly fraudulent actions of its insiders.
The causation element is also satisfied. The complaint alleges that the law firm failed to discover the fraudulent scheme and take action to prevent the insolvent company from continuing to sell insurance in California.[2] This harmed the company by allowing it to incur further liability which it would not otherwise have had. Although this liability exists largely because, of the fraudulent conduct of the insiders, the complaint alleges that the period of insolvency was extended, and the company’s liability thereby increased, because the law film helped the company continue to operate. The injury was thus caused, in part, by the allegedly negligent conduct of the law firm.[3]
As a legal entity distinct from its shareholders, the company had a cognizable claim under Article III against the law firm prior to the bankruptcy proceeding. Because a trustee may assert claims possessed by the debtor immediately prior to bankruptcy, see 11 U.S.C. §§ 541, 542, Loyd has standing to sue the law firm.
III.
The district court further held that even if the trustee had standing to sue the law firm, the complaint failed to state a *759 claim for legal malpractice. We agree, and affirm the dismissal on this ground.
Dismissal for'failure to' state a claim is reviewed de novo. See Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir.1998). Review is limited to the contents of the complaint, and all allegations of material fact are taken as true and construed in favor of the nonmoving party. See Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir.1998). “A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle [her] to relief.” Tyler v. Cisneros, 136 F.3d 603, 607 (9th Cir.1998).
The trustee made the following allegations:
• The law firm “provided legal services to [the company] with respect to regulatory and corporate matters, securities and litigation from no later than April of 1991 to March of 1994. At all times material to this case, Aguilar & Sebastinelli held itself out as an expert in the field of offshore insurance. ' While representing [the company] the law firm also represented other alien insurance companies, most of which were in financial difficulty or were operated by con men for the purpose of looting premiums.”
• “At all times, Aguilar & Sebastinelli knew that [the company] was relying upon Aguilar & Sebastinelli to represent its interests in California as an insurance company, and not the adverse interests of the Insider Rico Defendants' who were looting the company of its assets during the time period of Aguilar & Sebastinel-li’s representation.”
• Aalseth’s fraudulent misrepresentation regarding the worth of the company’s securities “was communicated directly to Sebastinelli, the attorney for [the company] who, in reliance on the accuracy, transferred the information to CDI in response to request for further information
• “In performing professional services for [First Assurance Casualty Co.], the attorney firm breached its duty •' to use the care and skill ordinarily used by reputable attorneys, all to . the detriment of FACC in the form ■ of looted premiums and increased insolvency. Said attorney firm breached its duties of loyalty and prudence owed to FACC by allowing the Insider RICO Defendants to act adverse to the interests of FACC and by advising FACC to continue to operate' as an insurer in violation of state insurance regulations and at a time when FACC was insolvent and therefore incapable of responding to its contractual obligations.”
The elements of a cause of action for attorney malpractice under California law are: (1) the duty to use such skill, prudence and diligence as members of the profession commonly possess; (2) breach of that duty; (3) a proximate connection between the breach and the injury; and (4) actual loss or damage. See Wiley v. County of San Diego, 19 Cal.4th 532, 536, 79 Cal.Rptr.2d 672, 966 P.2d 983 (1998). “The question of the existence of a legal duty of care in a given factual situation presents a question of law which is to be determined by the courts alone.” Nichols v. Keller, 15 Cal.App.4th 1672, 1682, 19 Cal.Rptr.2d 601 (1993).
The complaint fails to satisfy the duty element. It alleges only that: 1) the law firm relied upon faulty reports provided by Paine Webber and transmitted those documents to the California Department of Insurance; and 2) the firm has represented crooked clients in.the past. The trustee contends that these allegations support an inference that the law firm “turned a blind eye to insider misconduct,” and “should have known that the company was being looted.” However, absent accompanying allegations that the firm knew or should have known the reports were fraudulent, *760 or was aware of other facts suggesting that the company was acting illegally, such an inference cannot be supported.[4]
Alternatively, Loyd argues that these allegations are sufficient to state a claim for malpractice under FDIC v. O’Melveny & Meyers, 969 F.2d 744 (9th Cir.1992), rev’d on other grounds, O’Melveny & Myers v. FDIC, 612 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), reaff'd on remand, FDIC v. O’Melveny & Myers, 61 F.3d 17 (9th Cir.1995). There, we held that in the “high specialty field” of securities offerings, counsel has an automatic duty to “make a ‘reasonable, independent investigation to detect and correct false or misleading materials.’ ” O’Melveny & Meyers, 969 F.2d at 749 (quoting Felts v. National Account Sys. Assoc., Inc., 469 F.Supp. 54, 67 (N.D.Miss.1978)). We decline to impose a similar duty here. The O’Melveny & Meyers decision was dependent on the fact that the firm was assisting in a public offering and helped produce documents which suggested to the investing public that the client was financially sound. See id. at 746. Nowhere did the court indicate that, as a general matter, an attorney who represents corporate clients has an automatic duty to independently investigate whether its clients are engaging in fraudulent conduct.
IV.
Although Loyd, as trustee of a corporation whose assets were looted by its shareholders, had standing to sue the law firm, her complaint failed to state a claim for legal malpractice under California law. Accordingly, the district court properly dismissed the complaint.
AFFIRMED

. Because Loyd is appealing a dismissal pursuant to Fed.R.Civ.P. 12(b)(6), the Court takes the allegations in the complaint as true. See Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir.1998).

. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice” to establish causation for the purpose of standing. Lujan, 504 U.S. at 561, 112 S.Ct. 2130.

. Our holding that the trustee failed to state a claim for legal malpractice under California law does not undermine this conclusion. The complaint sufficiently alleges that the law firm's conduct was a cause of the injury. Whether this conduct rises to the level of legal malpractice goes to the merits of the lawsuit, not to the preliminary question of standing.

. At oral argument, counsel for the trustee asserted that the firm must have been aware of the fraud because it was apparent on the face of the documents submitted to the Department of Insurance. However, this assertion that the documents should have alerted the firm to fraud was absent from the complaint, which the trustee had two opportunities to amend.