Filed 5/16/14  Sylvester v. Sax CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RICHARD R. SYLVESTER, Plaintiff and Appellant, v. ROBIN SAX et al., Defendants and Respondents. | B248736 (Los Angeles County Super. Ct. No. BC491665) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard E. Rico, Judge.  Affirmed.

Richard R. Sylvester, in pro. per., for Plaintiff and Appellant.

Thompson Coe & O'Meara, Frances M. O'Meara and Stephen M. Caine for Defendants and Respondents.

————————————————

Plaintiff and appellant Richard R. Sylvester (Sylvester), in propria persona,[1] appeals a judgment of dismissal in favor of defendants and respondents Robin Sax and Law Offices of Robin Sax (Sax) following the sustaining without leave of a demurrer interposed to his first amended complaint.

Sax represented Sylvester in an earlier lawsuit, *Sylvester* v. *Hollander* (the *Hollander* action. In this action, Sylvester sued Sax for her alleged improper handling of the *Hollander* action.

The trial court determined Sylvester failed to state a cause of action against Sax because Sylvester released Sax from any further liability during a hearing in the *Hollander* action. We agree with the trial court's ruling and affirm the judgment of dismissal.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Pleadings.*

On September 6, 2012, Sylvester filed suit against Sax. The operative first amended complaint, filed two months later, asserted causes of action for professional negligence, fraud and breach of fiduciary duty. Sylvester alleged:

Between March and November of 2011, Sax represented him in the *Hollander* action. In that action, Sylvester sued Hollander for breach of contract and quantum meruit for unpaid professional services Sylvester provided to Hollander. Sylvester had retained Sax to represent him in the *Hollander* action based on her promise to zealously prosecute the case and take it to trial. However, Sax never intended to take the case to trial, had insufficient experience and failed to retain an experienced trial specialist to assist her. Had Sax properly litigated the matter, Sylvester "could have recovered from Hollander the sum of $1,200,000."

---

[1] Sylvester has a J.D. degree as well as a Ph.D. in economics, and is a mathematical economist with specialization in valuation of publicly traded and privately held corporate stock.

2

Instead of taking the *Hollander* matter to trial, Sax "willfully took action to force a fake settlement for only $30,000." At a mandatory settlement conference before Judge Lichtman on October 20, 2011, Sax "wrongfully accepted Hollander's offer of settlement for only $30,000." Sax's acceptance was "void" because she lacked written authorization from Sylvester, and she defrauded the court by pretending she had the required authority. "During the MSC negotiations on October 20, 2011, over the period from about 2:30 pm until about 5:00 pm, Sylvester repeatedly and firmly rejected the $30,000 amount that Hollander again offered. However, [Sax] failed to disclose Sylvester's rejection to Judge Lichtman, so that Hollander was not informed of Sylvester's rejection. As a matter of law, Sylvester's rejection made Hollander's $30,000 offer void. However, as fraud, at the conclusion of the MSC, although Hollander's offer was void, Sax trumpeted that there was a settlement. As fraud, in two later hearings, October 24, 2011 and November 22, 2011, Sax continued to falsely assert that there was a settlement."

2. *Sax's demurrer.*

a. *Sax's position that Sylvester's claims herein are barred by the settlement in the* <u>Hollander</u> *action*.

Sax demurred to the first amended complaint in its entirety, asserting the complaint failed to state facts sufficient to constitute any cause of action in that Sylvester "has previously released all claims contained within the First Amended Complaint, which he is now attempting to maintain against Defendant."

In support, Sax appended a copy of the reporter's transcript of a November 22, 2011 hearing in *Hollander* before Judge Bruguera and requested judicial notice thereof.

b. *Pertinent proceedings in* <u>Hollander</u>.

On November 22, 2011, in the *Hollander* matter, the parties were present in court before Judge Bruguera, following the settlement conference with Judge Lichtman. The trial court had before it, inter alia, a motion by Sax to be relieved as counsel for Sylvester.

The trial court advised Sylvester, "there is clearly a settlement. This is not mediation. When you went downstairs, you did not . . . participate in a mediation.

3

You participated in a settlement conference, and . . . there are different ways of enforcing a settlement . . . .

"From the papers, it was clear to me that you refused to sign the settlement you've agreed to . . . and didn't like the $30,000 because of the [attorney] liens and the fees, and I think counsel are seeking fees. I think you should negotiate that, and I think that's what I wanted to get you all here to do, is to negotiate in such a way that you don't have anything to do with each other."

"So, *Mr. Sylvester, you are attempting to represent yourself here, so I gather you're not happy with Ms. Sax's firm and you weren't happy with Mr. Smith.* It appears that it's kind of difficult to have a semi-lawyer as a client . . . , a J.D. as a client." (Emphasis added.)

Sax advised the court she had a check in hand from Hollander in the sum of $30,000, payable to Sylvester as well as Sax and Sylvester's previous attorney, Marc Smith, of Krane & Smith. Sax indicated she was willing to waive her entire fee. Smith likewise was willing to waive his contingency fee and sought only to recover his costs, which were in the range of $6,700.

Following a break in the proceedings, Sylvester, Smith and Sax placed the settlement on the record.

Smith stated: "During the break that we had, Mr. Sylvester and I had a discussion with the court's approval and we agreed that the firm of Krane and Smith will be paid its costs of $6,926.27, and in consideration for a waiver of its contingency fee to the settlement, the parties have agreed to a mutual release of any and all claims relating to the subject complaint and cross-complaint."

The court stated: "Great. So you agree to that, Mr. Sylvester?" Sylvester responded in the affirmative.

Smith added, "*Your honor, just for clarification, when we talked about the release, that includes any claims for legal malpractice or any other . . . .*" The trial court replied, "That's what all claims means." (Emphasis added.)

4

Having released Smith from liability, Sylvester then gave Sax a release on the same terms. The transcript continues:

Sax stated, "[t]he same release that he's giving to Mr. Smith, I'm asking for that release also. He indicated – you indicated that that's what he indicated to you, so I just want to make sure that the representations that Mr. Sylvester made to the court, that he intended to release me and my office, are memorialized on the record here, as well as to me, similarly as Mr. Smith."

"The Court: *Mr. Sylvester, all of our conversations indicated that you are releasing Ms. Sax as well from any further liability, any further lawsuits, as the same waiver that you gave Mr. Smith; is that right*?

"Mr. Sylvester: *That's correct*.

"The Court: Thank you. And did you want to add something?

"Mr. Sylvester: To add to that, my document that I sent to her relieved her from all liability except for fraud and gross negligence, which I don't believe is involved.

"The Court: Thank you for that, Mr. Sylvester. Go and be well."
(Emphasis added.)[2]

3. *Trial court's ruling herein.*

On January 24, 2013, Sax's demurrer to the first amended complaint came on for hearing. After taking judicial notice of the reporter's transcript of the November 22, 2011 proceedings in *Hollander* (Evid. Code, § 452, subd. (d)), the trial court sustained Sax's demurrer to the entire complaint without leave to amend.

Citing the November 22, 2011 transcript, the trial court found Sylvester released Sax from " 'any further liability, any further lawsuits.' " This release "was entered into, on the record, pursuant to a settlement in the *Hollander* action. Based on the parties'

---

[2]     The minute order following the November 22, 2011 hearing provides Sax's request to be relieved as counsel was granted, and an agreement was reached "as to the payment of settlement funds . . . and the terms of the settlement are stated on the record and agreed to by all counsel and by plaintiff."

release of claims [Sax] has demonstrated that the allegations in the [first amended complaint] are barred."

Thereafter, the trial court denied Sylvester's motion for reconsideration, and entered a judgment of dismissal.  This timely appeal followed.

## CONTENTIONS

Sylvester contends "[b]ased on relevant facts and law, Sax has *no* release for her malpractice liability."

## DISCUSSION

1. *Standard of appellate review.*

In determining whether a plaintiff has properly stated a claim for relief, "our standard of review is clear:  ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.] *We also consider matters which may be judicially noticed*."  [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff.'  [Citations.]"  (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126, italics added.)  Our review is de novo.  (*Ibid*.)

2. *Propriety of taking judicial notice of reporter's transcript in <u>Hollander</u> matter.*

Here, in determining the sufficiency of the first amended complaint, the trial court took judicial notice of the November 22, 2011 reporter's transcript in the *Hollander* matter.  The transcript is subject to judicial notice as a court record.  (Evid. Code, § 452,

6

subd. (d).) Judicial notice is appropriate here, to show certain words were stated in open court. Therefore, like the trial court, we take judicial notice of the *Hollander* transcript.[3]

3. *Trial court properly determined the November 22, 2011 release bars Sylvester's instant action against Sax.*[4]

a. *Mediation principles inapplicable*.

Sylvester contends Sax does not have a release for malpractice because there is no written settlement agreement signed by the litigants, as required by Evidence Code section 1118, subdivision (d) [oral agreement must be reduced to writing and signed by parties within 72 hours].)

The argument is unavailing because the cited section pertains to *mediation*. The parties here did not engage in mediation. The proceedings before Judge Bruguera on November 22, 2011 were subsequent to a mandatory settlement conference before Judge Lichtman. There is no ambiguity in that regard. Prior to participating in discussions before Judge Lichtman, the parties were advised by minute order that they would be participating in a settlement conference, "governed by Evidence Code section 1152, and not Evidence Code Sections 1115-1128 regarding mediations."

---

[3] Sylvester's arguments in this regard are devoid of merit. He contends the relevant statements at the November 22, 2011 hearing were made during *mediation*. Actually, the November 22, 2011 hearing took place in open court, following a settlement conference.

Sylvester also states the trial court's statements at the November 22, 2011 hearing were "clearly dicta, not a holding. Dicta does not support judicial estoppel or collateral estoppel." Although Sylvester possesses a J.D. degree, his arguments reflect his lack of understanding of certain basic legal concepts. The trial court in the *Hollander* matter made the same observation, stating, "The only thing is that I think you have a lot of half understanding of matters . . . ."

[4] We note that although Sylvester's first amended complaint pled Sax forced a "fake settlement" with Hollander for a mere $30,000, the November 22, 2011 transcript reflects a global settlement among Hollander, Sylvester, Sax and Smith for $30,000, to which Sylvester expressly assented before Judge Bruguera.

7

b.  *The settlement reached at the November 22, 2011 hearing in the <u>Hollander</u> matter properly was placed on the record therein.*

Because this was not mediation, the trial court properly entered the settlement on the record.  Code of Civil Procedure section 664.6 states in relevant part: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court *or orally before the court,* for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."

Here, during a break at the November 22, 2011 hearing in the *Hollander* matter, an agreement was reached "as to the payment of settlement funds . . . and the terms of the settlement [were] stated on the record and agreed to by all counsel and by plaintiff." The $30,000 global settlement reached in the *Hollander* matter included the release of Sax in exchange for her waiver of her contingency fee.  It was sufficient for the parties to place the settlement terms on the record in open court, as occurred here.

c.  *The November 22, 2011 agreement bars this action in its entirety.*

As indicated, at the November 22, 2011 hearing, Sylvester expressly agreed to release Sax from liability, on the same terms as he released Smith.

To reiterate, Smith stated:  "*Your honor, just for clarification, when we talked about the release, that includes any claims for legal malpractice or any other . . . .*" The trial court replied, "*That's what all claims means.*"  (Emphasis added.)

Having released Smith from liability, Sylvester then gave Sax a release on the identical terms.  The transcript continues:

Sax stated, "*[t]he same release that he's giving to Mr. Smith, I'm asking for that release also.  He indicated – you indicated that that's what he indicated to you, so I just want to make sure that the representations that Mr. Sylvester made to the court, that he intended to release me and my office, are memorialized on the record here, as well as to me, similarly as Mr. Smith.*"

"The Court: *Mr. Sylvester, all of our conversations indicated that you are releasing Ms. Sax as well from any further liability, any further lawsuits, as the same waiver that you gave Mr. Smith; is that right*?

"Mr. Sylvester: *That's correct*.

"The Court: Thank you. And did you want to add something?

"Mr. Sylvester: To add to that, *my document that I sent to her relieved her from all liability except for fraud and gross negligence*, which I don't believe is involved."[5]

Thus, Sylvester, on the record, expressly relieved Sax as well as Smith from any further liability, in exchange for their waiver of attorney fees.

In his operative first amended complaint, Sylvester purports to allege causes of action against Sax for professional negligence, fraud and breach of fiduciary, all arising out of Sax's representation of Sylvester in the *Hollander* matter. The global settlement in *Hollander*, which extended to Sax, renders Sylvester incapable of stating a cause of action against Sax arising out of the underlying litigation.

In an attempt to escape the bar of the release, Sylvester argues his stated conditions for releasing Sax were: (1) Sax would take the case to trial;[6] (2) Sax would refund his $10,000 deposit; and (3) Sax would have no release from gross negligence or fraud. Sylvester bases these three conditions on earlier emails he sent Sax. The argument is meritless. The release in open court was clear, unambiguous and unconditional. He cannot avoid the release by adding unspoken preconditions thereto.

---

[5] In his closing remark, Sylvester referred to an *earlier document* in which he excluded releasing Sax from claims involving gross negligence or fraud. However, any such *earlier document* was superseded by the unconditional release Sylvester gave Sax in open court on November 22, 2011, identical to the terms on which Sylvester released Smith.

[6] The alleged precondition that Sax take the *Hollander* case to trial was absurd. Given Sylvester's acceptance of the $30,000 settlement offer, there was no case to take to trial.

d. *Rules of Professional Conduct (rules).*

Sylvester invokes rule 3-400(A), which provides a member shall not "[c]ontract with a client *prospectively* limiting the member's liability to the client for the member's professional malpractice." (Italics added.) This rule prevents an attorney from contracting "with a client prospectively limiting the member's liability to the client for the member's professional malpractice." (*Nichols v. Keller* (1993) 15 Cal.App.4th 1672, 1684.) This rule, precluding an attorney from prospectively insulating himself or herself from liability to a client, has no application here. The November 22, 2011 release occurred *after* Sax ceased representing Sylvester.

Sylvester also relies on rule 3-400(B), which provides a member shall not "[s]ettle a claim or potential claim for the member's liability to the client for the member's professional malpractice, *unless the client is informed in writing that the client may seek the advice of an independent lawyer of the client's choice* regarding the settlement and is given a reasonable opportunity to seek that advice." However, rule 3-400(B), by its terms, does not apply to *former* clients.

At the commencement of the November 22, 2011 hearing in *Hollander*, the trial court stated: "*So, Mr. Sylvester, you are attempting to represent yourself here*, so I gather you're not happy with Ms. Sax's firm and you weren't happy with Mr. Smith." (Italics added.) The trial court also admonished Sylvester that he would be held to the same standard as an attorney, stating: "So you can represent yourself, but I'd hold you to all the procedures and things." Even if he had not been so warned, he would have been held to the same standards as an attorney. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985 [rules of civil procedure apply equally to parties represented by counsel and those who forgo attorney representation].) Because Sylvester represented himself at the November 22, 2011 hearing, his reliance on rule 3-400(B) is misplaced.

4. *Remaining issues not reached.*

It is unnecessary to address Sylvester's remaining arguments.

**DISPOSITION**

The judgment of dismissal is affirmed.  Sax shall recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



KLEIN, P. J.


We concur:



KITCHING, J.



ALDRICH, J.