Filed 9/28/16  Sutton v. Vanderveen CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| MARK D. SUTTON,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JEFFREY T. VANDERVEEN,<br><br>    Defendant and Respondent. | D068781<br><br><br>(Super. Ct. No. 37-2013-00031604-CU-PN-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed.

Haskett & Associates, Steven P. Haskett and Andrew M. Haskett; Frederick C. Phillips, for Plaintiff and Appellant.

Sandler, Lasry, Laube, Byer & Valdez, James G. Sandler and Jeffrey M. Byer for Defendant and Respondent.

Plaintiff Mark D. Sutton appeals a judgment in favor of defendant Jeffrey T. Vanderveen following the trial court granting Vanderveen's summary judgment motion. Sutton's complaint alleges a cause of action for legal malpractice arising from

Vanderveen's estate planning for Sutton's deceased mother, Ruth Siano (Ruth).[1] Ruth died while her marriage to Vince Siano (Vince) was in dissolution proceedings, and Sutton alleges that Vanderveen committed malpractice by not taking the necessary steps to ensure that Ruth's heirs received her share of all community assets.

The trial court concluded Vanderveen owed no duty of care to Sutton. It also determined Sutton lacked standing to pursue a successor in interest theory because the allegations in the complaint did not purport to seek relief on Ruth's behalf. Based on these findings, the trial court granted Vanderveen's summary judgment motion, and entered judgment in Vanderveen's favor. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*Sutton's Complaint*

Sutton filed a legal malpractice complaint against Vanderveen in 2013.[2] He alleged Ruth became involved in a divorce proceeding in April 2010. At the recommendation of her divorce attorney, Ruth retained Vanderveen in May 2010 to establish a new estate plan to replace a revocable trust Ruth and Vince had previously established, the Siano Family Trust. Ruth sought the new estate plan to ensure that her heirs received her share of all community assets, including her one-half interest in a $2 million municipal bond. Vanderveen prepared documents revoking the Siano Family

---

[1]    To avoid confusion, we refer to certain individuals by their first names.

[2]    The complaint was filed on behalf of Sutton and Ruth's other heirs. However, because Sutton is the only appellant, and there is no dispute as to allocation of the estate amongst Ruth's heirs, for simplicity and ease of reference we will generally refer to the allegations and trial court proceedings as if Sutton were the only plaintiff.

2

Trust and establishing a new trust for Ruth (Ruth's Trust). Ruth's Trust reflected Ruth's intent that, upon her death, the entirety of her estate be divided between Sutton and her deceased daughter's children.

In August 2010, Ruth was seriously injured in a car accident. Thereafter, Ruth asked Vanderveen to verify that, if she did not live long enough to complete the divorce, her heirs would receive her one-half interest in all community property. Vanderveen was aware of Ruth's precarious medical condition, "but did not preserve her testimony in any manner." Ruth died in November 2010, after she had executed her new trust, but before her community property was divided in the divorce.

Sutton alleged Vanderveen's conduct fell below the standard of care because he did not sever any of Ruth's joint tenancy assets prior to her death; failed to properly revoke the Siano Family Trust; failed to describe the assets comprising Ruth's Trust; failed to fund Ruth's Trust; failed to investigate the nature of Ruth's assets; and failed to ensure Ruth's estate plan would effectively distribute her share of the community property to her heirs. Sutton further alleged that as a result of Vanderveen's negligence, the will and trust Vanderveen drafted and Ruth executed did not carry out Ruth's intent to leave one-half of the community property to her heirs. In addition, Sutton alleged Vanderveen's fees were "excessive and unconscionable" and should be refunded.

*Ruth's Trust*

Ruth's Trust was an executed revocable trust and Ruth was designated as the sole trustee. Sutton was designated as successor trustee in the event of Ruth's "death, incapacity or resignation," with the same powers originally held by Ruth. Such powers

3

included the power to employ attorneys and engage in litigation on behalf of the trust, at the trust's expense.

Ruth's Trust was funded with $10 which, "together with any additional property that may later become subject to this Trust" comprised the "Trust estate." Ruth retained the right to add other property to the trust during her lifetime and upon her death. The trust included a page numbered "14," entitled "Assets Funded into Trust Estate," but the page was otherwise blank. Other than the $10 used to fund the trust, Ruth's Trust did not identify or list any specific assets.

Upon Ruth's death, one-half of the remainder of the trust estate was to be distributed to Sutton and the other half was to be distributed in equal shares to the children of Sutton's deceased sister.

*Ruth's Will*

Ruth executed her will in May 2010. The will noted that Ruth was in the process of a divorce. The will reflected Ruth's "intention that [her] separate property be transferred to and administered and distributed by the Trustee hereinafter referred to." The will provided that the remainder of Ruth's estate was to be distributed by the trustee, or successor trustee, of Ruth's Trust in accordance with the terms of the trust. Under the will, all taxes were to be paid from the residue of the estate, even those "attributable to property that does not form part of my Probate Estate (including but not limited to joint tenancy property, life insurance proceeds and any property over which [Ruth] may have general power of appointment." The will did not identify or list any specific assets.

*Summary Judgment Motion*

4

In March 2015, Vanderveen moved for summary judgment on the sole ground that Sutton's malpractice claim was barred, because Vanderveen owed no duty of care to Sutton. Vanderveen contended that under strict rules of privity, an attorney retained to prepare an estate plan owes a duty only to the testator client, not to the testator's beneficiaries. Relying on *Chang v. Lederman* (2009) 172 Cal.App.4th 67, 86 (*Chang*), Vanderveen argued that to establish that the testator's attorney also owes a duty to the beneficiaries, such beneficiaries must prove their inheritance violated the testator's "express bequest in an executed will or trust." According to Vanderveen, because neither the will nor trust demonstrated Ruth's intent that Sutton inherit the specific assets Sutton claims should have been part of the estate, Sutton cannot establish Vanderveen owed any duty to Sutton.

Sutton opposed the summary judgment motion, arguing Vanderveen misinterpreted *Chang*. He further maintained that application of the six-factor balancing test established by the California Supreme Court in *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 (*Biakanja*), to evaluate whether a duty exists to third-party beneficiaries, showed that Vanderveen owed Sutton a duty of care. Sutton alternatively argued that even if Vanderveen did not owe Sutton a duty, Sutton had standing to bring the malpractice action as a successor in interest to Ruth's estate, pursuant to Code of Civil Procedure section 377.30 et seq.[3]

---

3    All further statutory references are to the Code of Civil Procedure unless otherwise specified.

5

In the opposition, Sutton asserted that because Ruth had described all of her assets to Vanderveen, including the $2 million bond,[4] the family home in Oceanside, an annuity from Jackson National Life Insurance (Jackson Annuity), Zion Bank Stock, and a home in Washington State (Washington Residence), she had established her intent to leave her separate property and her share of the community property to Sutton. Other than Vanderveen's handwritten notes from his initial meeting with Ruth in April 2010, listing "1/2 house; 1/2 in bond of SM; 1/2 in cash," Sutton offered no other evidence to support this claim. Sutton further argued that three specific assets, the Jackson Annuity, Zion Bank Stock, and Washington Residence were held in joint tenancy by Ruth and Vince, and Vanderveen had taken no action to terminate the joint tenancy prior to Ruth's death.

On reply, Vanderveen argued that Sutton misconstrued the holding in *Chang* as limited to a potential beneficiary, rather than encompassing a named intended beneficiary like Sutton. Vanderveen reiterated that, pursuant to *Chang*, an estate attorney does not have a duty to nonclient beneficiaries "where the estate planning document at issue, 'although properly executed and free of other legal defects, does not accurately express the testator's intent.' " Consequently, Ruth's purported intent regarding certain specific assets to be included in her trust raised no "triable issue of fact sufficient to defeat Mr. Vanderveen's motion."

Concerning Sutton's joint tenancy argument, Vanderveen maintained Sutton had "failed to offer any evidence that [the three specific] assets were in fact held in joint

---

4    Vince's heirs dispute that the $2 million City of San Marcos bond is community property.

tenancy, or that Mr. Vanderveen was even told about them." Regarding the $2 million bond, Vanderveen argued that Sutton provided no evidence to support his argument that the asset could have been included in Ruth's Trust, as "Ruth was legally restrained from transferring assets into her trust" during the dissolution proceeding.

Vanderveen further argued that Sutton could not proceed as a successor in interest because Sutton did not comply with the procedural requirements necessary to commence a successor action under section 377.32. In addition, Vanderveen noted that Sutton's complaint did not seek redress for grievances Ruth suffered, which are the sole damages recoverable in a successor action under the Code of Civil Procedure and, it is undisputed, as part of the separate statement of facts, that Sutton sued Vanderveen for failing to protect the interests of the heirs.

*The Court's Summary Judgment Ruling*

After conducting a hearing, the court granted Vanderveen's summary judgment motion. In its written order, the court concluded Vanderveen owed no duty of care to Sutton pursuant to *Chang, supra*, 172 Cal.App.4th at pages 82-83, 86. The court found that although Sutton was an intended beneficiary of Ruth's estate, Vanderveen owed no duty of care to ensure Sutton received specific property that was not expressly identified in the testamentary documents. Because the complaint put Ruth's intent at issue, Vanderveen cannot be liable for the alleged harm. (*Chang,* at pp. 82, 86.) In addition, Sutton submitted no admissible evidence that Ruth intended or expressed the intention to

7

give Sutton the specific property he claims is due him.[5] The court further found that Sutton did not have standing to bring the claim on Ruth's behalf because the complaint seeks to remedy alleged wrongs asserted against Sutton and not against Ruth.

DISCUSSION

I. *Review Standards*

Summary judgment is properly granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c).) "The issues on a summary judgment motion are framed by the pleadings. [Citation.] A moving defendant has the initial burden to show one or more elements of the plaintiff's cause of action cannot be established, or that there is a complete defense to the claim. [Citation.] If the defendant meets this burden, the burden shifts to the plaintiff to show the existence of a triable issue." (*Kemper v. County of San Diego* (2015) 242 Cal.App.4th 1075, 1087.)

We review an order granting a motion for summary judgment de novo. (*Marshall v. County of San Diego* (2015) 238 Cal.App.4th 1095, 1107 (*Marshall*).) We make " 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.' "

---

5       During oral argument on the motion for summary judgment, Sutton's attorney argued that Vanderveen "kind of admitted [Ruth] wanted these assets [the bond] in the trust," referencing Vanderveen's actions in filing a Probate Code section 850 petition to try to get the bond into the trust following Ruth's death. However, no admissible evidence of the petition or Vanderveen's related statements was cited to oppose the summary judgment motion.

8

(*Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1143.) " 'We will affirm a summary judgment if it is correct on any ground, as we review the judgment, not its rationale.' " (*Marshall,* at p. 1107.)

However, "[t]he summary judgment procedure, inasmuch as it denies the right of the adverse party to a trial, is drastic and should be used with caution." (*Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 35.) "Consequently, '[i]n performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing her evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor.' " (*Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 806.)

## II. *Professional Negligence*

"The elements of a claim for professional negligence are:  ' "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." ' " (*Paul v. Patton* (2015) 235 Cal.App.4th 1088, 1095 (*Paul*).)  " 'A key element of any action for professional malpractice is the establishment of a duty by the professional to the claimant.  Absent duty there can be no breach and no negligence.' " (*Moore v. Anderson Zeigler Disharoon Gallagher & Gray* (2003) 109 Cal.App.4th 1287, 1294 (*Moore*).)  "The question of the existence of a legal duty of care in a given factual situation presents a question of law which is to be determined by the courts alone.  Entry of summary judgment in favor of

9

the defendant in a professional negligence action is proper where the plaintiff is unable to show the defendant owed such a duty of care." (*Nichols v. Keller* (1993) 15 Cal.App.4th 1672, 1682.)

### III. *Duty of Estate Attorney to Beneficiary*

Over the last several decades, California law has developed to impose a limited duty on a testator's attorney to the testator's intended beneficiary when the beneficiary is "an *expressly named* beneficiary of an *express bequest.*" (*Chang, supra*, 172 Cal.App.4th at p. 82.) When a testator's intent is explicit and unambiguous, imposing a duty of care to a beneficiary does not conflict with the attorney's undivided duty of loyalty to the testator. (*Paul, supra*, 235 Cal.App.4th at p. 1100.)

Historically, California did not recognize any duty of care to a nonclient because malpractice liability required strict privity. (*Chang, supra*, 172 Cal.App.4th at pp. 76-77.) However, in 1958, the California Supreme Court rejected the strict privity requirement in a case brought by a decedent's beneficiary against a notary public who drafted the decedent's will and supervised its flawed execution. (*Biakanja, supra*, 49 Cal.2d at pp. 650-651.) The court concluded the plaintiff beneficiary should be allowed to recover despite the absence of privity. (*Id.* at p. 651.) The court established a balancing test to apply in such cases, including the following factors: (1) "the extent to which the transaction was intended to affect the plaintiff"; (2) "the foreseeability of harm to him"; (3) "the degree of certainty that the plaintiff suffered injury"; (4) "the closeness of the connection between the defendant's conduct and the injury suffered"; (5) "the

10

moral blame attached to the defendant's conduct"; and (6) "the policy of preventing future harm."  (*Id.* at p. 650.)

A few years later, the California Supreme Court applied the *Biakanja* balancing test in a case brought by a testator's beneficiaries against the testator's attorney for professional negligence in drafting a testator's will.  (*Lucas v. Hamm* (1961) 56 Cal.2d 583, 588 (*Lucas*).)  The *Lucas* court reasoned that the same factors developed in *Biakanja* also must be applied to determine whether a beneficiary may bring an action against an attorney.  (*Lucas*, at p. 588.)  However, the court expressed concerns that liability to attorneys "could be large and unpredictable in amount."  (*Id.* at p. 589.)  The *Lucas* court therefore imposed an additional factor to those identified in *Biakanja*:  "whether the recognition of liability to beneficiaries of wills negligently drawn by attorneys would impose an undue burden on the profession."  (*Lucas,* at p. 589.)  The court concluded that extending the attorney's liability to beneficiaries of the negligently drawn will in that case "would not place an undue burden on the profession."  (*Id.* at p. 589.)  The court therefore held that lack of privity did not preclude the beneficiary's malpractice action against testator's attorney.  (*Ibid.*)  However, the court concluded the attorney was not liable either to the testator or beneficiaries, because his alleged error related to rules against perpetuities and restraints on alienation, a confusing and unsettled area of law.  (*Id.* at pp. 591-592.)

In contrast, an appellate court applying the *Biakanja* and *Lucas* factors concluded a testator's attorney had no duty to the testator's beneficiaries to ascertain his client's testamentary capacity.  (*Moore, supra*, 109 Cal.App.4th at p. 1298.)  In *Moore*, the court

11

emphasized an attorney's duty of loyalty to his client, and distinguished *Biakanja* and *Lucas* as cases in which "there is clearly no potential for conflict between" the attorney's duty to the client and any duty owed to intended beneficiaries. (*Moore*, at p. 1299.) The *Moore* court observed that "the true intent of the testator *is* the central question" (*ibid.*) and contrasted the issue of testamentary capacity, which cannot be ascertained from the testamentary documents, with the circumstances in *Lucas* and *Biakanja*, in which the testator's intent was "undisputed" and demonstrated by the testamentary documents themselves. (*Moore*, at pp. 1300-1301.) The court concluded that extending a duty to intended beneficiaries under the former circumstances "would place an intolerable burden upon attorneys" because the attorney would "be subject to potentially conflicting duties to the client and to potential beneficiaries," as well as "to conflicting duties to different sets of beneficiaries." (*Ibid.*) The court further reasoned there are "practical and policy reasons for refusing to extend the duty" when the issue cannot be determined from the testamentary documents, as courts " 'must be sensitive to the potential for misunderstanding and the difficulties of proof inherent in the fact that disputes such as these will not arise until the decedent—the only person who can say what he or she intended—has died.' " (*Id.* at p. 1297.)

Thereafter, an appellate court applied *Biakanja* and *Lucas* to conclude that defendant attorney owed a duty to testator's beneficiaries when he drafted a will leaving the testator's entire estate to her caregiver, as the testator intended, but failed to take the necessary steps to ensure the bequest complied with legal standards. (*Osornio v.*

12

*Weingarten* (2004) 124 Cal.App.4th 304, 313, 330-334 (*Osornio*).)[6] The court concluded imposing liability under those facts placed no undue burden on the profession, as the attorney clearly knew of his client's intent and therefore would not be faced with conflicting loyalties in representing the testator client. (*Id.* at p. 335.) The court distinguished the case from others in which no duty was found, clarifying that the attorney had a duty "to take appropriate action to carry out the testator's wishes—that were *expressed and formalized* in her signed will." (*Id.* at p. 336.)

More recently, in *Chang*, the Court of Appeal addressed the following two questions: (1) "does a testator's lawyer owe a duty of care to a nonclient who alleges she was a potential beneficiary of the testator's estate in the absence of an executed will or trust instrument expressly reflecting the testator's intent"; and (2) "[d]oes the answer to the question change if the nonclient was previously named in a will or trust instrument executed by the testator and the allegation is the testator intended to revise his or her estate plan to increase the gift to the beneficiary?" (*Chang, supra*, 172 Cal.App.4th at pp. 71-72.) The court concluded the answer to both questions was no, "[b]ecause recognizing an expanded duty of care in either situation would place an intolerable burden on the legal profession." (*Id.* at p. 72.)

The *Chang* court, after reviewing the evolution of California decisions addressing the duty of care to beneficiaries, concluded such duty arose only "when the plaintiff was

---

6 In applying the *Biakanja* and *Lucas* test, the *Osornio* court noted that California cases rarely apply the "moral blame" factor mentioned in *Biakanja* as a part of their analysis. (*Osornio, supra*, 124 Cal.App.4th at p. 321, fn. 15.)

13

an *expressly named* beneficiary of an *express bequest*." (*Chang, supra*, 172 Cal.App.4th at p. 82.) In such cases, courts imposed a duty of care for defects in effecting the testator's express intent, rather than "in the expression of the testator's intent," and the court reasoned that in the absence of "an explicit manifestation of the testator's intentions, the existence of a duty—a legal question—would always turn on the resolution of disputed facts and could never be decided as a matter of law." (*Id.* at pp. 82-83.) The court therefore concluded that the sixth *Biakanja* and *Lucas* factor, undue burden to the profession, precluded imposing a duty owed to a potential beneficiary. (*Chang*, at p. 84.)

Chang argued that her case was different, as she was an *expressly named intended beneficiary*, therefore the defendant owed her a duty of care not only as to the amount specifically identified in the executed trust, but also to revise the trust to carry out the testator's intent to expand his bequest to Chang. (*Chang, supra*, 172 Cal.App.4th at p. 84.) The court reasoned that a testator's attorney owes only a "limited duty" to an intended beneficiary "to properly effectuate a bequest expressly set forth in the testamentary document." (*Ibid.*) The court further explained that the duty sought by Chang would expose the attorney to conflicting duties to the various beneficiaries. (*Id.* at p. 85.) The court concluded that because Chang's allegation was "not based on an express bequest in an executed will or trust, [defendant] owed her no duty of care." (*Id.* at p. 86.)

In contrast, in *Paul*, an appellate court concluded the testator's attorney owed a duty to the beneficiaries when the decedent's attorney admitted that his drafting error in an executed trust amendment resulted in the failure to carry out the testator's wishes.

14

(*Paul, supra*, 235 Cal.App.4th at p. 1098.) As in *Chang*, the claim in *Paul* turned on the testator's intent, which is "a prerequisite to the imposition of a duty on the attorney to the plaintiff." (*Paul*, at p. 1098.) In contrast to *Chang*, the *Paul* court concluded that the sixth *Biakanja* and *Lucas* factor favored the plaintiff beneficiaries, because no undue burden is imposed on the legal profession by requiring an estate attorney to properly document a testator's wishes using basic terms; and imposition of liability does not conflict with an attorney's duty of loyalty to the testator client when the testator's intent is undisputed. (*Paul*, at p. 1100.) The court distinguished *Chang*, noting that in *Paul* defendant had admitted to the drafting error, which is "not an allegation most disappointed beneficiaries can make." (*Paul*, at p. 1100.)

In applying these cases, we conclude the trial court did not err in entering judgment on Vanderveen's summary judgment motion. Vanderveen owed Sutton, an expressly named intended beneficiary, only the limited duty to exercise ordinary care and skill to effectuate the bequest *expressly* set forth in Ruth's Trust. (See *Chang, supra*, 172 Cal.App.4th at p. 84; *Osornio, supra*, 124 Cal.App.4th at p. 336.) Where the testator's "intent is placed in issue—the lawyer will not be held accountable to the potential beneficiary." (*Chang*, at p. 82.)

Although Ruth's Trust explicitly stated her intent to pass the entirety of her estate to her descendants, it is undisputed that there is no express reference to any of the four assets at issue here in any executed document. In Ruth's Trust, her "trust estate" is defined to include only the $10 used to fund the trust "together with any additional property that may later become subject to this trust." Ruth's will similarly does not

15

identify or reference any specific assets.  Sutton's claims are based on Ruth's express

general intent to leave all of her estate to her beneficiaries in combination with Ruth's

intent regarding specific assets as expressed in Vanderveen's handwritten notes from a

meeting with Ruth, which list "1/2 house; 1/2 in bond of SM; 1/2 in cash."  However,

these notes are not signed by Ruth and are not explicit[7] and there is no evidence that

Ruth had any intention other than to wait until the completion of the divorce to fund her

trust with these assets.

Sutton argues that application of the full six factor *Biakanja* and *Lucas* test would

establish his standing to bring a legal malpractice action against Vanderveen.  However,

the same test was applied in *Chang* and the court held that even if all five other factors

weighed in favor of Chang, the sixth factor (undue burden on the profession from

imposing liability) required a rejection of Chang's claim.  (*Chang, supra*, 172

Cal.App.4th at pp. 83-84.)

Sutton further argues that his case is distinguishable from *Chang* because there is

no conflict of interest relating to Ruth's intended beneficiaries.  He reads the test too

narrowly.  In addition to conflicts among potential beneficiaries, if a beneficiary's claim

is based on the alleged intent of a decedent, who is no longer able to testify to this intent,

there is potential conflict between the decedent's actual intent and the intent as depicted

by the beneficiary when a claim is based on anything other than decedent's intent as

*expressly* stated in the testamentary instrument.  (*Paul, supra*, 235 Cal.App.4th at p. 1100

---

7    For example, it is unclear whether the reference to "1/2 house" refers to the family residence in Oceanside or the Washington Residence.

[when "there is no dispute regarding the decedent's intent, the imposition of liability will not compromise the attorney's duty of undivided loyalty to the testator"].)  Because Ruth's intent is not express and unambiguous, imposition of liability may conflict with Vanderveen's duty of loyalty to Ruth, and he does not owe Ruth's beneficiaries a duty of care.

Sutton contends that his case is "directly in line" with several other cases in which courts concluded there was no undue burden on the profession and imposed a duty of care.  The cases Sutton refers to are distinguishable:  in each case the duty of care arose from the testator's undisputed and unambiguous intent.  In *Heyer v. Flaig* (1969) 70 Cal.2d 223, the Supreme Court recognized an attorney's duty to testator's daughters when the testator sought to leave them her entire estate, but the testator's attorney omitted language in the will necessary to defeat the claims of decedent's posttestamentary spouse. (*Id.* at p. 229, overruled on other grounds in *Laird v. Blacker* (1992) 2 Cal.4th 606, 617.)  In *Bucquet v. Livingston* (1976) 57 Cal.App.3d 914, the testator's attorney owed a duty to the beneficiaries when "there was no ambiguity, either as to the tax saving intent of [testator] or of the identity of the beneficiaries," and the attorney's drafting errors led to avoidable tax consequences.  (*Id.* at pp. 921-922, 924-925.)  In *Garcia v. Borelli* (1982) 129 Cal.App.3d 24 (*Garcia*), the court assumed, without deciding, that an attorney owed a duty to beneficiaries when the will expressly stated the testator's intent regarding the

17

specific disposition of his separate, joint and community property.[8]  (*Id.* at pp. 28, 32.)

Finally, in *Osornio,* the court concluded that an attorney had a duty of care to the

beneficiary caregiver when, despite testator's express intent that her estate be bequeathed

to the caregiver, the bequest failed as a result of the attorney's failure to ensure that the

transfer of property was free from avoidable challenge.  (*Osornio, supra*, 124

Cal.App.4th at pp. 312, 335.)  In each of these cases, the testator's intent was undisputed,

thus there was no potential conflict between the testators' attorneys' duty to their clients

and any duty of care imposed on behalf of the intended beneficiaries.

On the facts of this case, the trial court did not err in finding no triable issue of

material fact with respect to the absence of any duty owed by Vanderveen to Sutton.

Vanderveen is entitled to judgment as a matter of law on that ground.[9]

IV.  *Standing as Successor in Interest*

Sutton further contends even if Vanderveen does not owe Sutton any duty, he has

standing to bring a malpractice claim on Ruth's behalf as her successor in interest.

Under section 377.30, a decedent's successor in interest may bring a claim on the

decedent's behalf, but the damages recoverable from such action "are limited to the loss

---

[8]     Moreover, any language Sutton relies on in *Garcia* is dicta—the only issue considered there was whether the action was barred by collateral estoppel—the negligence allegations were uncontested.  (*Garcia, supra*, 129 Cal.App.3d at pp. 30-31.)

[9]     On appeal, Sutton raised for the first time the issue of Vanderveen's breach of duty of care, and Vanderveen responded, arguing that there was no breach.  Because we have concluded that Vanderveen does not owe Sutton a duty of care as a matter of law, we need not address the issue of breach.  (*Moore, supra*, 109 Cal.App.4th at p. 1294 [" 'Absent duty there can be no breach and no negligence.' "].)

or damage that the decedent sustained or incurred before death" (§ 377.34). In addition, section 377.32 requires that a successor in interest seeking to commence an action "*shall* execute and file an affidavit" that includes various information. (§ 377.32, subd. (a), italics added.) "It is a well-settled principle of statutory construction that the word . . . 'shall' is ordinarily construed as mandatory. . . ." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 443.) Consequently, a plaintiff who has not fulfilled the requirements of section 377.32 may not proceed in an action on a decedent's behalf. (*In re A.C.* (2000) 80 Cal.App.4th 994, 1003 (*A.C.*).)

Sutton has not established his standing to bring an action as Ruth's successor in interest. As a threshold matter, Sutton did not file an affidavit with his malpractice complaint as required by section 377.32. Because Sutton failed to comply with the mandatory requirements of section 377.32, he cannot bring his claim based on a successor in interest theory under section 377.30. (*A.C., supra*, 80 Cal.App.4th at p. 1003.)

Furthermore, Sutton does not allege that he is bringing his claim as a successor in interest to Ruth. Instead, Sutton's complaint focuses on the harm to Ruth's beneficiaries, alleging as follows: (1) because joint tenancy assets were not severed "the heirs have been deprived of those assets"; (2) with exercise of proper care, "Plaintiffs would have obtained one-half interest in all of the community property owned by Plaintiffs' decedent at her death"; (3) the "will and trust executed by Plaintiffs' decedent was ineffective in carrying out her intention to leave her entire estate to Plaintiffs, all to Plaintiffs' damage"; and (4) "attorney's fees charged to Plaintiffs' decedent, and to Plaintiff Mark Sutton, were

19

excessive and unconscionable."  Only a single allegation references any injury to *Ruth*, from allegedly "excessive and unconscionable" attorney fees.  However, on summary judgment it was undisputed that Ruth's beneficiaries sued Vanderveen "for professional negligence for (1) failing to ensure they inherited Ruth's alleged community property interest in [the bond]; and (2) failing to ensure they inherited Ruth's alleged one-half interest in three specific [joint tenancy assets]," rather than for any breach of duty to Ruth.  Sutton therefore lacks standing as Ruth's successor in interest to bring the claims he has asserted on his own behalf.

Sutton likewise has failed to establish his standing to bring the claims as a successor trustee on behalf of Ruth's Trust.  Although an estate attorney's duty to a client's beneficiaries is strictly limited, a successor in interest has broad rights to bring an action on behalf of a decedent's *estate* pursuant to the Probate Code.[10]  (Prob. Code, §§ 8524, subd. (c), 9820, subd. (a).)  As explained by the California Supreme Court, in the case of a successor fiduciary, "the absence of privity, viewed as an impediment to standing, is a gap the Legislature has filled." (*Borissoff v. Taylor & Faust* (2004) 33 Cal.4th 523, 530 (*Borissoff*).)

In *Borissoff*, the executor of an estate brought a malpractice suit against tax attorneys hired by the prior administrator; the suit was dismissed on the ground defendants owed no duty to plaintiff, due to the absence of privity; and the decision was

_____

10      However, to bring an action under the Probate Code, a plaintiff still must comply with the Code of Civil Procedure, which Sutton has failed to do.  (Prob. Code, § 9820, Editor's Notes, 1990 Enactment.)

20

affirmed by the Court of Appeal. (*Borissoff, supra*, 33 Cal.4th at pp. 527-528.) The California Supreme Court reversed, concluding that Probate Code "provisions strongly support the inference that a successor fiduciary does have standing to sue an attorney retained by a predecessor fiduciary. . . ." (*Borissoff*, at p. 530 [referencing Prob. Code, §§ 8524, 9820, 10801].) The court explained that the Probate Code provisions applied only to successor fiduciaries, not beneficiaries, and concluded that a "successor fiduciary must have standing to sue the predecessor's attorney if there is to be an effective remedy for legal malpractice that harms estates and trusts administered by successor fiduciaries." (*Borissoff*, at p. 531.)

We recently applied *Borissoff* to conclude that a successor trustee adequately pleaded a claim on behalf of the prior trustee "in her capacity as trustee, not in her personal capacity," when the complaint contained the following allegations: (1) defendants provided legal advice to the prior trustee concerning trust administration; (2) defendants represented themselves to the court as attorneys for the prior trustee; (3) the trust had paid defendants' legal fees; and (4) the trust agreement granted trustees the power to employ attorneys and compensate them from the trust property. (*Kelly v. Orr* (2016) 243 Cal.App.4th 940, 946 (*Kelly*).)

In contrast, no standing is available under *Borissoff* when a plaintiff fails to allege an injury to the trust. In *Paul*, successor trustees (who were also the beneficiaries of decedent testator's estate) brought a claim alleging injuries to the plaintiffs as beneficiaries, with respect to their portion of the distribution. (*Paul, supra*, 235 Cal.App.4th at p. 1094.) The appellate court concluded that "*Borissoff* and its progeny

21

are inapposite," because the complaint did not allege any harm to the trust estate. (*Id.* at p. 1101.)

Here, Sutton's claims are more analogous to those in *Paul* than in *Kelly.* Ruth's Trust designates Sutton as the successor trustee in the event of her death, with all of the powers and rights of the trustee, including the power to employ attorneys and to commence litigation. However, the allegations of Sutton's complaint are based on the injury to Ruth's beneficiaries and the undisputed purpose of his action is to remedy the beneficiaries' injuries, as described above. Unlike the complaint in *Kelly*, Sutton's complaint does not allege that he is bringing his action as a successor in interest to Ruth, in her role as former trustee of Ruth's Trust. Although the complaint contains an allegation that Ruth was charged "excessive and unconscionable" attorney fees, there is no allegation that such fees came from the trust estate. The complaint does not allege that Ruth retained Vanderveen in her capacity as trustee for the benefit of the trust, or that the trust paid for Vanderveen's services, and Sutton did not identify any facts in dispute regarding these issues at summary judgment. On this record, we conclude that there are no triable issues of fact with respect to Sutton's claim that he has established standing to bring the malpractice claim as a successor in interest.

DISPOSITION

The judgment is affirmed.  Respondent to recover costs on appeal.


_____
                                                    HALLER, J.

WE CONCUR:


_____
        HUFFMAN, Acting P. J.


_____
        O'ROURKE, J.