FIRST INTERSTATE BANK OF ARIZONA, N.A., a national banking association; Talley Realty Finance and Investment Company, Inc., an Arizona corporation, Plaintiffs–Appellants,

v.

MURPHY, WEIR & BUTLER,
a professional corporation,
Defendant–Appellee.

First Interstate Bank of Arizona, N.A., a national banking association; Talley Realty Finance and Investment Company, Inc., an Arizona corporation, Plaintiffs–Appellees,

v.

Murphy, Weir & Butler, a professional corporation, Defendant–Appellant.

Nos. 98–17420, 99–15410.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 14, 2000

Filed April 20, 2000

Edward Freidberg, Stephanie J. Finelli, Freidberg Law Corporation, Sacramento, California, for the plaintiff-appellant-cross-appellee.

Robert A. Lewis and Randy Michelson, McCutchen, Doyle, Brown & Enersen, San Francisco, California, for the defendant-appellee-cross-appellant.

Before: O'SCANNLAIN and RYMER, Circuit Judges, and MILLER, District Judge.*

RYMER, Circuit Judge:

The issue before us is whether a law firm owes a duty to its client to disclose that it hired the law clerk of a judge before whom it was appearing in a pending matter.

---

* Honorable Jeffrey T. Miller, United States District Judge for the Southern District of California, sitting by designation.

Murphy, Weir & Butler (Murphy) represented First Interstate Bank of Arizona and Talley Realty Finance Company (FIB/Talley) who were secured creditors in the Chapter 11 bankruptcy proceeding of Scottsdale Pinnacle Associates (SPA). The Honorable Leslie Tchaikovsky was the presiding bankruptcy judge. Although unknown to the Murphy partner assigned to this matter, the firm hired Judge Tchaikovsky's law clerk for employment at the end of the clerkship. As it turned out, the "Chinese wall" was not impermeable as it should have been, for the law clerk continued to have some contact with the case. Judge Tchaikovsky ruled in favor of FIB/Talley, but later recused herself upon SPA's motion after SPA found out about the clerk's relationship with Murphy.[1] A new trial before a different judge resulted in a decision with which FIB/Talley was not as happy. As a result, it sued Murphy for malpractice.

The district court held it was not foreseeable that hiring the law clerk without disclosure would ultimately result in Judge Tchaikovsky's recusal, because judges and law clerks are required to preserve the court's impartiality and the appearance of impartiality. For this reason, Murphy had no duty to disclose that the firm had hired the Judge's clerk. We agree. Given the presumption of judicial impartiality, it was not reasonably foreseeable that the law clerk would continue to work on Murphy's matters contrary to the Code of Conduct for Law Clerks; that the Judge would fail to screen off the law clerk completely in violation of the Code of Judicial Conduct; and that the conduct of both the Judge and the law clerk would amount to an appearance of impropriety such as to require recusal. As judges and law clerks are in the best position to prevent impropriety, we decline to impose a duty of disclosure on law firms.

Accordingly, we affirm on FIB/Talley's appeal. Murphy also sought indemnification of expenses incurred in defending this lawsuit, but the district court denied its request. We affirm this decision as well.

## I

In early 1993, FIB/Talley engaged Murphy as local counsel in the Chapter 11 bankruptcy of SPA. FIB/Talley, as holder of the first deed of trust on SPA's only asset, opposed confirmation of SPA's reorganization plan and sought relief from the automatic stay in order to foreclose on the property. On August 12, 1994, Judge Tchaikovsky entered final orders denying SPA's reorganization plan; granting the motion of FIB/Talley for relief from the automatic stay and to determine the value of their net secured claim, which she did at $4.75 million; and denying SPA's motion to amend the findings and for a new trial.

Meanwhile, on November 19, 1993, Murphy offered employment to the Judge's only law clerk, to begin at the end of the clerkship in September 1994. The clerk accepted shortly thereafter. A Murphy partner told Judge Tchaikovsky of the firm's interest in hiring the clerk, and the clerk was reminded during the interview with the Murphy hiring committee that she could not work on any Murphy matters if she were to accept employment with the firm. Judge Tchaikovsky instructed the clerk to do no more substantive work on any case in which Murphy represented a party in interest, but the clerk handled a few telephone calls pertaining to procedural matters, observed some courtroom proceedings, marked up a memorandum relating to an earlier plan of reorganization, and was told by the Judge of her intended decision on the final plan.

SPA found out about the clerk's employment in late August and moved on September 20, 1994 to recuse Judge Tchaikovsky and to vacate her orders. Judge Tchaikovsky certified the relevant facts on October 31, 1994, and acknowledged that she had violated 28 U.S.C. § 455(a)[2] by

---

1. The basis for recusal was the *appearance* of impropriety; there is no suggestion of actual impropriety or lack of impartiality by the Judge or the law clerk.

2. 28 U.S.C. § 455(a) provides that "[a]ny jus-

failing to insulate the clerk completely from the SPA proceeding. She recused herself and the matter was reassigned to Bankruptcy Judge Randall Newsome. After holding an evidentiary hearing, Judge Newsome determined that the conduct of Judge Tchaikovsky and the law clerk amounted to an appearance of impropriety, and ordered a new trial. Subsequently, Judge Newsome valued the SPA property at $6 million, resulting in a net secured claim for FIB/Talley of $5.4 million.[3] He confirmed SPA's plan of reorganization on September 11, 1995.[4]

FIB/Talley brought this action for negligence, breach of fiduciary duty, and breach of contract on February 2, 1996. The district court declined to dismiss on statute of limitations grounds as it believed there was a factual dispute about when Murphy actually stopped representing FIB/Talley, but granted summary judgment on the merits. Murphy then moved for indemnification of attorney's fees and costs in the amount of $441,372, but the district court denied the motion.

Both parties have timely appealed.

## II

FIB/Talley argues that Murphy owed a duty to it to ensure that the firm's hiring of the Judge's law clerk did not jeopardize its own litigation of the bankruptcy case. In FIB/Talley's view, the risk of harm was clearly foreseeable because failing to notify the client, the client's lead attorneys, opposing counsel, or the Judge would open the door to a later recusal motion and a possible vacatur of Judge Tchaikovsky's final orders. It notes that because recusal must be brought up as soon as there is a basis to challenge a judge's impartiality, SPA would have been precluded from raising the issue after Judge

Tchaikovsky issued her final orders if Murphy had disclosed the hiring when it happened. Alternately, it points out, FIB/Talley's lead counsel could have replaced Murphy as local counsel.

■■■ The general principles that apply are well settled. Attorneys have a duty to "keep a client reasonably informed about significant developments relating ... to the representation...." California Rules of Professional Conduct 3–500. Although the attorney owes a basic obligation to provide sound advice in furtherance of a client's best interests, "such obligation does not include a duty to advise on all possible alternatives no matter how remote or tenuous." *Davis v. Damrell*, 119 Cal. App.3d 883, 889, 174 Cal.Rptr. 257 (1981). A "legal malpractice [claim] is compounded of the same basic elements as other kinds of actionable negligence: duty, breach of duty, causation, and damage." *Nichols v. Keller*, 15 Cal.App.4th 1672, 1682, 19 Cal. Rptr.2d 601 (1993). FIB/Talley's negligence and breach of fiduciary duty claims likewise turn on whether Murphy owed them a duty and, if so, whether the breach of that duty caused the harm suffered. "The question of the existence of a legal duty of care in a given factual situation presents a question of law which is to be determined by the courts alone. Entry of summary judgment in favor of the defendant in a professional negligence action is proper where the plaintiff is unable to show the defendant owed such a duty of care." *Id.* at 1682, 19 Cal.Rptr.2d 601 (citing *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal.App.3d 1089, 1095, 283 Cal.Rptr. 53 (1991)). Whether there is a duty, in turn, depends largely on the foreseeability of the harm alleged: "Foreseeability of harm, though not determina-

---

tice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

3. When coupled with the interest accumulated on the secured claim from August 1994 and the value of an unsecured claim, FIB/Tal-

ley recovered over $7.4 million. Judge Newsome's ruling, however, did not give FIB/Talley relief from the automatic stay, which would have permitted it to foreclose on SPA's property.

4. FIB/Talley did not appeal.

tive, has become the chief factor in duty analysis." *Id.* at 1686, 19 Cal.Rptr.2d 601. And the foreseeability component of duty analysis is a legal issue:

> Foreseeability is a question of fact in many contexts. However, in defining the boundaries of duty, foreseeability is a question of law for the court. The question of foreseeability in a "duty" context is a limited one for the court and is readily contrasted with the fact-specific foreseeability questions bearing on negligence (breach of duty) and causation posed to the jury or trier of fact.

*Id.*[5]

█ Applying these principles, it is clear that the harm FIB/Talley posits—a new trial necessitated by the Judge's recusal—was neither foreseeable to Murphy nor preventable by it. Judicial impartiality is presumed. *See United States v. Herrera–Figueroa,* 918 F.2d 1430, 1436 n. 8 (9th Cir.1990); *In the Matter of Demjanjuk,* 584 F.Supp. 1321, 1324–25 (N.D.Ohio 1984); *United States v. Zagari,* 419 F.Supp. 494, 501 (N.D.Cal.1976). Section 455(a), the Code of Judicial Conduct, and the Code of Conduct for Law Clerks all place the burden of maintaining impartiality and the appearance of impartiality on the judge and the law clerk.

Section 455(a) requires a judge to disqualify herself in any proceeding in which her impartiality might reasonably be questioned. 28 U.S.C. § 455(a). This mandate is identical to the duty set out in the Code of Judicial Conduct Canon 3(E)(1).[6] And pursuant to Canon 3(C)(2), a judge "shall require staff, court officials and others subject to the judge's direction and control

to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties."

█ Canon 2 of the Code of Conduct for Law Clerks requires a law clerk to avoid impropriety and the appearance of impropriety; it states:

> A law clerk should not engage in any activities that would put into question the propriety of the law clerk's conduct in carrying out the duties of the office. A law clerk should not allow family, social, or other relationships to influence official conduct or judgment. A law clerk should not lend the prestige of the office to advance the private interests of others; nor should the law clerk convey or permit others to convey the impression that they are in a special position to influence the law clerk.

*Id.* Canon 5(C)(1) directly speaks to the issue of prospective employment and instructs:

> A law clerk should refrain from financial and business dealings that tend to detract from the dignity of the office, interfere with the proper performance of official duties, exploit the law clerk's position, or involve the law clerk in frequent transactions with individuals likely to come in contact with the law clerk or the court in which the law clerk serves. During the clerkship, a law clerk may seek and obtain employment to commence after the completion of the clerkship; if any law firm, lawyer, or entity with whom a law clerk has been employed or is seeking or has obtained

---

**5.** Both parties submitted expert declarations opining on foreseeability, but FIB/Talley's contention that the opinion of its expert was improperly ignored is incorrect. The district court properly treated foreseeability in the context of determining whether Murphy owed a duty of disclosure as an issue of law.

**6.** Canon 3(E)(1) provides: "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned...." The *Commentary* further indicates that

[u]nder this rule, a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless whether any of the specific rules in Section 3E(1) apply. For example, if a judge were in the process of negotiating for employment with a law firm, the judge would be disqualified from any matters in which that law firm appeared, unless the disqualification was waived by the parties after disclosure by the judge.

future employment appears in any matter pending before the appointing judge, the law clerk should promptly bring this fact to the attention of the appointing judge, and the extent of the law clerk's performance of duties in connection with such matter should be determined by the appointing judge.

*Id.* It is expected that when a "clerk has accepted a position with an attorney or with a firm, that clerk should cease further involvement in those cases in which the future employer has an interest." Alvin B. Rubin & Laura B. Bartell, *Law Clerk Handbook* 23 (1989). It is up to the judge to make sure this happens. "Judges themselves are in the best position to forestall future difficulties with a few simple instructions and quick action where necessary." Kevin D. Swan, Comment, *Protecting the Appearance of Judicial Impartiality in the Face of Law Clerk Employment Negotiations,* 62 Wash. L.Rev. 813, 840 (1987).

Of course judges are not infallible. *See, e.g., Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 862, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (judge failed to inform the parties of association with institution that could be affected by outcome of litigation); *Hall v. Small Business Administration,* 695 F.2d 175 (5th Cir.1983) (magistrate judge allowed law clerk who was a former member of the plaintiff class and had accepted employment with the class's counsel to work on the case); *Miller Industries, Inc. v. Caterpillar Tractor Co.,* 516 F.Supp. 84 (S.D.Ala.1980) (district judge allowed law clerk who had accepted employment with defendant's counsel to continue to work on

case). But despite this, judges (and their law clerks) are presumed to be impartial and to discharge their ethical duties faithfully so as to avoid the appearance of impropriety. Lawyers are entitled to assume that judges (and law clerks) will perform their duty. Further, there are well established and well known procedures for ensuring both the reality and appearance of impartiality.[7] For this reason, it is not foreseeable that hiring a law clerk will result in recusal.

■ Relying on *Miller* and *Hall,* FIB/Talley points out that if Murphy had told SPA about hiring Judge Tchaikovsky's clerk, SPA might have agreed to waive any objection to Murphy continuing to represent FIB/Talley as local counsel, or set up a waiver in the absence of timely objection to the court, in either case averting the Judge's recusal and vacatur of her orders.[8] Neither *Miller* nor *Hall* was concerned with the issue of foreseeability. Both involved the timeliness of a party's motion to disqualify a judge whose law clerk continued to work on a case in which his future employer was counsel. In each, the losing side did not learn of the basis for disqualification until after judgment had been entered. Their belated motion to disqualify was opposed on the ground of untimeliness and waiver, but the argument was rejected, the judge was disqualified, and the judgment was vacated. In *Miller* and *Hall,* as here, it is obvious in retrospect that the problems could have been averted if the law firm had refrained from offering employment so long as the clerk was working for the judge, or if the firm had told

---

7. FIB/Talley suggests that the problem of isolating a clerk who has an offer or has accepted future employment is exacerbated when (as here) the judge only has a single clerk. This may be so, but has no bearing on the judge's duty or the law clerk's. If the possibility of being without a law clerk poses a practical problem for the judge, the judge can always cure it by either taking on a judicial extern, or prohibiting his or her clerks from interviewing or accepting future employment during the clerkship year.

8. Section 455(a) disqualification is one that might be waived under § 455(e) if preceded by full disclosure on the record of the basis for disqualification. However, recusal issues must be raised at the earliest possible time after the facts are discovered. *See, e.g., United States v. Conforte,* 457 F.Supp. 641, 653 (D.Nev.1978), *aff'd,* 624 F.2d 869, 880 (9th Cir.1980).

the other side.. But hindsight is not the test for foreseeability.

More importantly, FIB/Talley submits no authority indicating that a law firm should refrain from recruiting judicial clerks—indeed, the Canons indicate otherwise—or must tell opposing counsel, its own clients or the court if it offers employment to a law clerk or its offer is accepted.[9] Murphy had no basis for believing that the Judge's impartiality was reasonably subject to question. Both Judge Tchaikovsky and her law clerk knew about the clerk's prospective employment with Murphy. Typically (and consistent with the duty to avoid the appearance of impartiality), in these circumstances a judge would either tell the clerk not to do *any* work on the matter, or disclose the clerk's disqualification on the record and proceed only if the disqualification were waived. Here, the Judge did not seek waivers, but rather told the clerk not to do *substantive* work on the SPA litigation. Regrettably, this did not go far enough to forestall recusal. But the fact that the wall was permeable in *this* case does not make it foreseeable that judges and law clerks will not fully honor their ethical duties in *all* cases. In sum, it is entirely reasonable for law firms to rely on the presumption that judges and law clerks will maintain their impartiality by adequately following appropriate procedures when the law clerk has obtained an offer or a position of future employment.

9. The California State Bar Formal Opinion, 1987–93 to which FIB/Talley refers, is inapposite. It has to do with an attorney's obligation to disclose a close personal relationship with a court reporter or bailiff to his client. This is animated by concerns that do not pertain to a law clerk—that the relationship might inhibit the attorney from challenging a transcript or the bailiff's conduct with the jury.

   FIB/Talley also relies upon the order entered by Judge Kozinski in *In re Bernard*, 31 F.3d 842 (9th Cir.1994), in which he declined to recuse himself in a bankruptcy appeal on account of a possible appearance of impropriety arising out of his wife's position as the U.S. Trustee. In doing so, he expressed the view that

This leaves the burden where it should be as a matter of policy and practicality. The law clerk is the one person who is always sure to know of a conflict. Even in the computer age there is no reason to assume that counsel of record is aware of everyone whom his firm has hired and where each prospective employee is presently working. We therefore cannot agree with FIB/Talley that Murphy should bear the blame for Judge Tchaikovsky's recusal.

■ Nor does FIB/Talley articulate any compelling need for a new duty of the sort it proposes. On the one hand it would overcompensate for the occasional judicial lapse; but on the other hand, it would underachieve the objective for no amount of disclosure can guarantee the appearance of impartiality if the judge and clerk fall short of what duty turns out to demand. At the end of the day neither counsel nor clients can control what happens inside a judge's chambers. Accordingly, we agree with the district court that Murphy owed no duty to inform FIB/Talley, lead counsel, SPA, or Judge Tchaikovsky that Judge Tchaikovsky's law clerk had accepted an offer of future employment with the firm. In the absence of duty, none of the claims survives.

## III

■ On its cross-appeal, Murphy argues that it is entitled to indemnification for expenses because it prevailed on a

[c]ounsel for a party who believes a judge's impartiality is reasonably subject to question has not only a professional duty to his client to raise the matter, but an independent responsibility as an officer of the court. Judges are not omniscient and, despite all safeguards, may overlook a conflict of interest. A lawyer who reasonably believes that the judge before whom he is appearing should not sit must raise the issue so it may be confronted and put to rest. Any other course would risk undermining public confidence in our judicial system.

*Id.* at 847. However, as we explain, here the relevant facts were not unknown to the judge, nor was the conflict overlooked.

claim that arose from its role as an agent for its corporate clients. However, Arizona and Delaware only provide for indemnification of directors, not agents, *see* Ariz. Rev.Stat. § 10–852; 8 Del.Code § 145(c); and California, which recognizes indemnity for agents, Cal. Corp.Code § 317(d), treats a corporation's outside counsel as an independent contractor which cannot seek indemnity under § 317(d) for costs incurred in defending a legal malpractice claim brought by the client. *See Channel Lumber Co., Inc. v. Simon,* 78 Cal.App.4th 1222, 1228–29, 93 Cal.Rptr.2d 482, 487 (2000).

AFFIRMED.