NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. CC-19-1177-TaLG |
| | CC-19-1186-TaLG |
| JAVIER JIMENEZ, | |
| | Bk. No. 2:19-bk-12271-VZ |
| Debtor. | |
| | |
| JAVIER JIMENEZ, | |
| Appellant, | |
| v. | MEMORANDUM* |
| ARCPE 1, LLP, AKA ARCPE HOLDING, LLC; NANCY K. CURRY, CHAPTER 13 TRUSTEE, | |
| Appellees. | |

Argued and Submitted on January 30, 2020
at Pasadena, California

Filed – March 3, 2020

---

    * This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Vincent P. Zurzolo, Bankruptcy Judge, Presiding

———————

Appearances:    Appellant Javier Jimenez argued pro se, assisted by
translator Victor Rivera; Sevan Gorginian argued for
appellee ARCPE 1, LLP aka ARCPE Holding, LLC;
Masako Okuda argued for appellee Nancy K. Curry,
Chapter 13 Trustee

———————

Before: TAYLOR, LAFFERTY, and GAN, Bankruptcy Judges.

**INTRODUCTION**

Here we consider related appeals.

First, chapter 13[1] debtor Javier Jimenez challenges an order
dismissing his bankruptcy case[2] (the "Dismissal Order"). But he failed to
promptly propose a confirmable plan, produce documents to the
chapter 13 trustee, and otherwise to perform his debtor duties. We see no
error in the dismissal and, therefore, we AFFIRM the Dismissal Order.

He also challenges an order (the "Stay Relief Order") granting
appellee ARCPE 1, LLP ("ARCPE") § 362(d)(1) and (d)(4) relief from the

———————

[1] Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal
Rules of Bankruptcy Procedure.

[2] Appeal No. CC-19-1186.

automatic stay to foreclose on his residence located in Los Angeles, California (the "Property").[3] Given our affirmance of case dismissal, we DISMISS the § 362(d)(1) stay relief appeal as MOOT; we cannot reimpose the stay in a dismissed case.

But the appeal of the § 362(d)(4) stay relief is not moot. Because *in rem* relief may impact future cases, we can grant effective relief on appeal. And ARCPE did not support its § 364(d)(4) stay relief request with evidence or argument beyond reference to three bankruptcies filed over the last decade and the unadorned assertion that this constitutes the inappropriate scheme required for *in rem* relief. The record adds no additional supportive evidence. And the bankruptcy court made no findings supporting this relief beyond a reference to the three cases and the conclusion that this evidenced the statutorily required scheme. As the mere filing of three bankruptcies over a 10-year period does not unfailingly equate to a scheme to delay, hinder, or defraud creditors, we REVERSE the Stay Relief Order to the extent it grants § 362(d)(4) relief.

## FACTS

The following facts are primarily reconstructed from the bankruptcy court's dockets.[4]

---

[3] Appeal No. CC-19-1177.

[4] Mr. Jimenez did not timely or appropriately comply with Rules 8014(a)(8) and 8018(a), (b)(1), and (c) in connection with his briefing and submission of the record.

(continued...)

**The Property and Deeds of Trust**

Mr. Jimenez and his non-debtor spouse, Julieta Jimenez, co-own the Property. In 2008, they borrowed money from Wells Fargo Bank, N.A.[5] and E-Loan, Inc. ("E-Loan") and secured their indebtedness by deeds of trust on the Property. E-Loan's lien under its deed of trust (the "Deed of Trust") was second in priority. ARCPE claims interests in the Deed of Trust and related note (the "Note") through a series of assignments.

**The Bankruptcies**

**The First Bankruptcy**

The Jimenezes defaulted on Wells Fargo's loan. Accordingly, it scheduled a foreclosure sale for August 12, 2009. But on that day, the Jimenezes filed a chapter 13 case (*In re Jimenez*, 09-bk-31209-SK) (the

---

[4](...continued)
Such noncompliance may be grounds for affirmance or waiver of issues. *See Mitchel v. General Elec. Co.*, 689 F.2d 877, 878–79 (9th Cir. 1982); *McCarthy v. Prince (In re McCarthy)*, 230 B.R. 414, 416–17 (9th Cir. BAP 1999); 9th Cir. BAP R. 8018(a)-1(c). Nevertheless, given Mr. Jimenez's *pro se* status, we accept and consider his briefing, as well as the attached transcripts. We also exercise our discretion to take judicial notice of documents electronically filed in his bankruptcy cases and related adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n. 9 (9th Cir. BAP 2003). But we do not consider any evidence attached to his appellate briefing that was not filed in the bankruptcy court. *See Encino Bus. Mgmt. v. Prize Frize, Inc. (In re Prize Frize, Inc.)*, 150 B.R. 456, 461 (9th Cir. BAP 1993).

[5] At some point, Federal Home Loan Mortgage Corporation, as Trustee for the benefit of the Seasoned Credit Risk Transfer Trust, Series 2018-2 ("FHLM Corp."), acquired Wells Fargo Bank, N.A.'s secured claim. We refer to FHLM Corp. and Wells Fargo jointly as "Wells Fargo" herein.

"First Case"). They asserted that Wells Fargo's senior lien overencumbered the Property, and, thus, they also filed an adversary complaint to avoid the Deed of Trust pursuant to § 506(a) and (d). The bankruptcy court eventually entered a default judgment, avoiding the Deed of Trust lien *on the condition that* the Jimenezes complete their confirmed chapter 13 plan and receive a discharge.

Neither condition subsequent occurred. Almost two years into the case, Wells Fargo moved for stay relief to continue its foreclosure and, after a failed attempt at resolution through an adequate protection stipulation, the Jimenezes dismissed the First Case.

**The Second Bankruptcy**

The Jimenezes filed a second chapter 13 case (*In re Jimenez*, 12-bk-34474-SK) (the "Second Case") pro se one day before dismissing the First Case. The stay as to the Property promptly terminated by operation of § 362(c)(3)(A).

The Jimenezes failed to provide notice of this Second Case and all relevant filings therein to BLB Trading, LLC ("BLB"), the then holder of the Note. They neither scheduled BLB as a creditor nor provided for payment to it under their confirmed chapter 13 plan.

In May 2013, the Jimenezes obtained a loan modification from Wells Fargo and dismissed the Second Case without receiving a discharge.

**The Third Bankruptcy**

Thereafter ARCPE became the Deed of Trust beneficiary, the Jimenezes made no payments on the Note, and it matured. Accordingly, ARCPE scheduled a foreclosure sale of the Property.

Mr. Jimenez stopped the foreclosure by filing his third chapter 13 case (*In re Jimenez*, 19-bk-12271-VZ) (the "Third Case"). ARCPE then filed a $262,131.60 secured claim. His chapter 13 plan did not provide for ARCPE's claim.

### ARCPE's Motion for Relief from Stay

ARCPE moved for relief from the automatic stay (the "Stay Relief Motion") to continue its foreclosure for cause under § 362(d)(1) and based on an alleged scheme to delay, hinder, or defraud creditors under § 362(d)(4).

Mr. Jimenez filed opposition in which he asserted, without admissible evidence or authority, that ARCPE did not have a legitimate secured claim. He also asserted that he filed bankruptcy in good faith.

At the hearing on the Stay Relief Motion, Mr. Jimenez appeared pro se with an uncertified interpreter, Victor Rivera. The bankruptcy court allowed Mr. Rivera to translate even though Mr. Jimenez confirmed that he had personally read, understood, and prepared the opposition to the Stay Relief Motion. After hearing argument, the bankruptcy court observed that ARCPE had met its burden to establish a colorable secured claim. It then found that ARCPE presented admissible evidence that Mr. Jimenez:

(1) filed multiple bankruptcies; and (2) failed to make postpetition payments as they came due on the Note.

On July 18, 2019, the court entered a form Stay Relief Order, granting the Stay Relief Motion pursuant to both § 362(d)(1) and (d)(4). The order contained a bald finding that Mr. Jimenez was involved in a scheme to delay, hinder, or defraud creditors that involved multiple bankruptcies affecting the Property.

### The Trustee's Motion to Dismiss

At the § 341(a) meeting of creditors and in an objection to confirmation of the chapter 13 plan, the Trustee raised numerous case deficiencies (the "Issues"): (1) improper service of the plan and related notice; (2) significant plan shortcomings, including failures to meet § 1325(a)(4) liquidation requirements, to contribute all of Mr. Jimenez's disposable income, and to provide for all claims; (3) missing mandatory filings; (4) incomplete and inaccurate Schedule disclosures; and (5) significant unfulfilled document requests. Mr. Jimenez neglected to address these Issues. Accordingly, and because he also missed a plan payment, the Trustee moved to dismiss the case (the "Dismissal Motion").

At the Dismissal Motion hearing, the Trustee confirmed that, while Mr. Jimenez was now current on plan payments and had produced his 2017 tax returns, he failed to remedy the other Issues. Mr. Jimenez appeared pro se, was again assisted by his uncertified interpreter,

7

Mr. Rivera, and offered no excuse for his failures. He merely stated that he wanted the case to remain open to protect the Property from ARCPE.

The bankruptcy court then entered its Dismissal Order based on the failure to adequately remedy the Issues.

**The Appeals**

Mr. Jimenez timely appealed from the Stay Relief Order and the Dismissal Order. He requested a stay pending the appeals, which we denied. ARCPE also moved to dismiss the stay relief appeal as moot because the Third Case was dismissed and it had a scheduled foreclosure sale. We denied its motion.

At oral argument, ARCPE confirmed that it had not completed its foreclosure. And Mr. Rivera, who appeared at oral argument as a "translator," eventually acknowledged that after case dismissal: (1) Mr. Jimenez granted him an interest in the Property; and (2) he filed his own bankruptcy. *See In re Rivera*, 19-bk-20664-SK.[6]

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (G). Subject to the mootness discussion below, we have jurisdiction under 28 U.S.C. § 158.

---

[6] After oral argument, the presiding judge in Mr. Rivera's bankruptcy case entered an order granting ARCPE § 362(d)(1) and (d)(4) relief to foreclose on the Property. Mr. Rivera has appealed the order to this Panel.

**ISSUES**

1. Did the bankruptcy court abuse its discretion when it dismissed the Third Case?

2. Is Mr. Jimenez's appeal of the Stay Relief Order moot?

3. Did the bankruptcy court err when it determined that ARCPE had standing to file and prosecute the Stay Relief Motion?

4. Did the bankruptcy court abuse its discretion when it granted ARCPE stay relief?

5. Was the bankruptcy court biased against Mr. Jimenez?

**STANDARD OF REVIEW**

We review mootness and standing issues de novo. *Suter v. Goedert*, 504 F.3d 982, 985 (9th Cir. 2007) (mootness); *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (standing).

We review the bankruptcy court's orders dismissing a chapter 13 bankruptcy case and granting relief from the automatic stay for an abuse of discretion. *Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth)*, 455 B.R. 904, 914 (9th Cir. BAP 2011) (dismissal); *First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.)*, 470 B.R. 864, 868 (9th Cir. BAP 2012) (relief from stay).

A bankruptcy court abuses its discretion if it applies an incorrect legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or not supported by the record.

*United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (*en banc*). We may affirm on any ground fairly supported by the record. *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1223 (9th Cir. 1999).

**The bankruptcy court did not abuse its discretion by dismissing the case.**

Section 1307(c) provides that the bankruptcy court may either dismiss a chapter 13 case or convert it to chapter 7 for cause, "whichever is in the best interests of creditors and the estate." It must first consider "cause" based on a list of nonexclusive grounds set forth in § 1307(c)(1)–(11). *Nelson v. Meyer (In re Nelson)*, 343 B.R. 671, 675 (9th Cir. BAP 2006). If "cause" exists, it then must elect between conversion or dismissal. *Id*.

Although the bankruptcy court did not explicitly identify the basis for dismissal, we conclude that the record strongly supports dismissal under § 1307(c)(1): "unreasonable delay by the debtor that is prejudicial to creditors." 11 U.S.C. § 1307(c)(1). "A debtor's unjustified failure to expeditiously accomplish any task required either to propose or confirm a chapter 13 plan may constitute cause for dismissal under § 1307(c)(1)." *de la Salle v. U. S. Bank, N.A. (In re de la Salle)*, 461 B.R. 593, 605 (9th Cir. BAP 2011) (quoting *Ellsworth*, 455 B.R. at 915).

Here, over three months passed between the time the Trustee notified Mr. Jimenez of the Issues and the Dismissal Motion hearing. At the hearing, Mr. Jimenez neither denied nor attempted to justify his failure to resolve the Issues. Nor did he contest that his failures prejudiced creditors.

10

On this record, the bankruptcy court did not err in finding that cause existed to dismiss or convert the case.

Finding cause existed under § 1307(c), the bankruptcy court was obliged to then determine whether dismissal or conversion would be in the best interests of creditors and the estate. *Nelson*, 343 B.R. at 675. The record provides no evidence of the bankruptcy court's deliberations in this regard. But Mr. Jimenez did not request conversion as an alternative to dismissal and did not raise the issue on appeal. And in this case, the record entirely supports that dismissal is the best option from a creditor's perspective.

Accordingly, we affirm the Dismissal Order.

**Our affirmance of case dismissal moots the appeal of § 362(d)(1) relief.**

ARCPE asserts that case dismissal moots the stay relief appeal. We agree, in part.

We lack jurisdiction over a moot appeal. *Ellis v. Yu (In re Ellis)*, 523 B.R. 673, 677 (9th Cir. BAP 2014). An appeal is moot if, at the time it is pending, the issues do not present a live case or controversy. *Id*. The test for mootness is whether the appellate court can grant effective relief to appellant if appellant prevails on appeal. *Id*. Because Mr. Jimenez timely appealed from the Dismissal Order, the appeal from the Stay Relief Order was not moot because the Panel had the power to restore the bankruptcy and reverse the Stay Relief Order.

But once we affirm the Dismissal Order, the metrics change and the

11

§ 362(d)(1) appeal is moot. Section 362(c)(2)(B) provides that the stay terminates at the time the case is dismissed; we cannot reinstate it even if we disagree with the bankruptcy court.[7] *See, e.g., Rice v. Dunbar (In re Rice)*, 357 B.R. 514, 519 (8th Cir. BAP 2006), *aff'd*, 271 F. App'x 538 (8th Cir. 2008).

But his appeal of the § 362(d)(4) relief is not likewise moot because we have the power to grant him effective relief regardless of case dismissal. If such an order is properly recorded, it prevents the debtor from obtaining the benefits of the automatic stay as to the property at issue in future bankruptcies. *First Yorkshire*, 470 B.R. at 871. Thus, it has serious effects outlasting the duration of the dismissed case. *See Alakozai v. Citizens Equity First Credit Union (In re Alakozai)*, 499 B.R. 698 (9th Cir. BAP 2013). We have the power to remedy those effects notwithstanding case dismissal.

Accordingly, we have jurisdiction over the § 362(d)(4) component of the Stay Relief Order, which we will now address.[8]

**The bankruptcy court did not err in determining that ARCPE had standing to prosecute the Stay Relief Motion.**

---

[7] We note that even were we to address the merits of Mr. Jimenez's appeal of the § 362(d)(1) relief, we would conclude that the bankruptcy court did not abuse its discretion in granting this relief. *See, e.g., Price v. Del. State Police Fed. Credit Union (In re Price)*, 370 F.3d 362, 373 (3d Cir. 2004) (persistent failure to make monthly payments under loan documents can constitute cause for § 362(d)(1) stay relief).

[8] As we noted *supra*, ARCPE has not yet conducted its foreclosure sale. But, until Mr. Jimenez is legally or physically ousted from possession, even foreclosure will not moot his § 362(d)(4) appeal. *Id*.

Because Mr. Jimenez is pro se, we liberally construe his brief. *See Cruz v. Stein Strauss Trust # 1361 (In re Cruz)*, 516 B.R. 594, 604 (9th Cir. BAP 2014). Mr. Jimenez contends that ARCPE does not hold a valid secured claim. We interpret his contention as a challenge to ARCPE's standing as a real party in interest entitled to seek relief from the automatic stay.

Under § 362(d), only a "party in interest" may request stay relief. A moving party is a "party in interest" in the stay relief context if "it has a colorable claim to enforce a right against property of the estate." *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 914–15 (9th Cir. BAP 2011). Under California law, a trustee, mortgagee, beneficiary, or any of their agents or successors in interest can initiate nonjudicial foreclosure proceedings. *Debrunner v. Deutsche Bank Nat'l Trust Co.*, 204 Cal. App. 4th 433, 440–42 (2012); *see also Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010)).

ARCPE evidenced its right to enforce the Deed of Trust through copies of the original Deed of Trust and Corporate Assignments of Mortgage. These documents sufficiently support its assertion of standing to foreclose.

In response, Mr. Jimenez claims that (1) the assignments were fabricated; (2) private mortgage insurance paid the debt under the Note in full; (3) the Deed of Trust lien was avoided in the First Case; and (4) ARCPE must prove it "owns the Note." But he has offered no evidence that

ARCPE's claim is either fabricated or inflated or that private mortgage insurance paid the Note for his benefit or otherwise.[9] And the Deed of Trust lien was not avoided in his First Case because he dismissed it without receiving a discharge. Finally, to the extent that he claims ARCPE must prove it "owns the Note," he is wrong. As explained *supra*, ARCPE need only show that it has the right to commence foreclosure proceedings to establish standing to prosecute its Stay Relief Motion. It has done so.

**We reverse concerning the § 362(d)(4) relief.**

But ARCPE has not shown that it was entitled to § 362(d)(4) relief. A bankruptcy court may grant *in rem* relief from the automatic stay under § 362(d)(4) to prevent schemes using bankruptcy to thwart foreclosures through one or more real property transfers or bankruptcies. *First Yorkshire*, 470 B.R. at 870. The bankruptcy court must affirmatively find the existence of a scheme. *Id.* at 870–71.

The term "scheme" is not defined in the Code. Some courts have drawn from Black's Law Dictionary and defined the term in the context of § 362(d)(4) to mean an "intentional artful plot or plan to delay, hinder or defraud creditors." *See, e.g., In re Duncan & Forbes Dev., Inc.*, 368 B.R. 27, 32 (Bankr. C.D. Cal. 2006). Thus "[a] scheme is an intentional construct. It does not happen by misadventure or negligence." *Id.*; *see also In re Everton*

---

[9] At best, he included in his untimely and unauthorized sur-reply, filed on the eve of the Stay Relief Motion hearing, unauthenticated correspondence discussing the possibility of a workout for the Note.

*Aloysius Sterling*, 543 B.R. 385, 394 (Bankr. S.D.N.Y. 2015) ("[A] scheme warranting § 362(d)(4) relief implies a level of insidiousness or deceitfulness.").

In moving for § 362(d)(4) relief, ARCPE simply requested that the bankruptcy court take judicial notice of the Jimenezes' 2009 and 2012 bankruptcies. Otherwise, it submitted no evidence or even argument to the bankruptcy court or on appeal that the three cases were part of a scheme to delay, hinder, or defraud creditors that originated in 2009 and continued over the decade thereafter. The filing of multiple bankruptcies over a very extended period of time (as in this case) does not invariably justify the findings required for § 362(d)(4) relief. 3 Collier on Bankruptcy ¶ 362.05[19][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2013). *Matter of House*, No. 17-30434-BEH, 2018 WL 1505572, at *7 (Bankr. E.D. Wis. Mar. 26, 2018) (citing *In re Gray*, 558 F. App'x 163, 166 (3d Cir. 2014); *United States v. Olayer (In re Olayer)*, 577 B.R. 464, 469 (Bankr. W.D. Pa. 2017)). The bankruptcy court's findings were similarly conclusory. Thus, we cannot determine on this record that the required scheme existed. Indeed, the only evidence we have is to the contrary.

ARCPE failed to articulate how the first two bankruptcies were designed or executed in a manner to delay, hinder, or defraud Wells Fargo or ARCPE's predecessor in interest, BLB. As for Wells Fargo, the Jimenezes endeavored to pay it through two confirmed chapter 13 plans, an adequate

15

protection stipulation, and a loan modification.[10] And, as for ARCPE, the 2009 and 2012 bankruptcies arguably aided it by preventing Wells Fargo from foreclosing on the Property while its predecessor was wholly unsecured and unmotivated to act. Further incongruent with an artful plot to delay, hinder, or defraud creditors, the Jimenezes allowed the automatic stay to terminate as to the Property in the Second Case as they neglected to seek a continuation of the stay under § 362(c)(3)(B). And, apparently, they have faithfully paid Wells Fargo for years and reduced debt senior to ARCPE. These facts do not suggest deceit, insidiousness, or scheming.

Thus, while Mr. Jimenez responded to the continuing foreclosure threat to his Property by invoking bankruptcy protection on three occasions — in 2009, 2012, and 2019 — we cannot divine from the record a coherence between his three bankruptcy cases spanning over a decade that allows us to affirm in the absence of argument or findings that delineate the required scheme. Nor is there discernable conduct in the record that clearly amounts to an abusive filing.

Because we have no findings beyond reference to the three filings and the conclusion that the required scheme exists, we cannot affirm. The record does not support the conclusion.

As a result, we REVERSE the bankruptcy court's Stay Relief Order

---

[10] Mr. Jimenez asserts that he has also been making postpetition payments to Wells Fargo. There is no evidence to the contrary in the record.

only in so far as it grants ARCPE relief from the automatic stay under § 362(d)(4).[11]

**There is no evidence that the bankruptcy court was prejudiced or tampered with the record.**

Finally, Mr. Jimenez claims that the bankruptcy court showed favoritism toward ARCPE and linguistic prejudice against him and tampered with the record. There is no evidence supporting these claims.

"Judicial impartiality is presumed." *First Interstate Bank of Ariz., N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 987 (9th Cir. 2000). *See also Liteky v. United States*, 510 U.S. 540, 554-55 (1994). An individual alleging judicial bias has an exceptionally heavy burden and must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). The allegation must generally stem from some extrajudicial source. *Liteky*, 510 U.S. at 550-55. Where there is no evidence of an extrajudicial source for bias, the individual alleging bias must present evidence that the judge exhibited "such a high degree of favoritism or antagonism to make fair judgment impossible." *Id*. at 555. The test is an objective one—"whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Seidel v. Durkin (In re Goodwin)*, 194 B.R. 214, 222 (9th Cir.

---

[11] Remand for further proceedings or findings related to § 362(d)(4) relief is unnecessary given the § 362(d)(4) relief granted in Mr. Rivera's bankruptcy case.

BAP 1996) (quotation omitted).

Mr. Jimenez failed to meet his heavy burden. His alleged feeling that the bankruptcy judge was personally biased against him is legally insufficient. While he claims the court tampered with filings and incorrectly transcribed the hearings, he provided no proof of such claims. Indeed, he fails to identify anything in the transcripts of the hearings or in the orders on appeal that reasonably raises a question regarding the bankruptcy court's impartiality or propriety.

In fact, the record entirely supports the opposite conclusion. The bankruptcy judge read and considered his untimely and unauthorized filings in opposition to the Stay Relief Motion and Dismissal Motion. He then allowed Mr. Rivera to "translate" at the hearings despite Mr. Rivera being uncertified and Mr. Jimenez confirming that he had personally read and understood the Stay Relief Motion and prepared his opposition. In sum, the allegations of judicial bias and tampering are not grounded on facts that would create a reasonable doubt concerning the bankruptcy court's impartiality and propriety. We reject them utterly.

## CONCLUSION

For the foregoing reasons, we AFFIRM the Dismissal Order. We DISMISS AS MOOT all portions of the Stay Relief Order other than the *in rem* relief granted against the Property. We REVERSE the Stay Relief Order insofar as it grants § 362(d)(4) relief.

18